**In re The LEONARD JED COMPANY, Debtor.**

**Bankruptcy No. 84–BX–1813.**

United States Bankruptcy Court, D. Maryland.

July 7, 1989.

David S. Musgrave, Semmes, Bowen & Semmes, Baltimore, Md., for debtor, Leonard Jed Co.

Harvey M. Lebowitz, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., for counsel to the Creditors' Committee.

## MEMORANDUM OPINION SUSTAINING DEBTOR'S OBJECTION TO ALLOWANCE OF THIRD APPLICATION FOR INTERIM COMPENSATION TO CREDITORS' COMMITTEE COUNSEL

JAMES F. SCHNEIDER, Bankruptcy Judge.

By this opinion, the United States Bankruptcy Court for the District of Maryland at Baltimore sustains the Chapter 11 debtor's objection to interim fees claimed by creditors' committee counsel where (1) the case was not economically staffed; (2) counsel claimed fees for services which did not benefit the estate; (3) time records did not adequately describe the nature of many services rendered; and (4) creditors' committee counsel was not entitled to a premium fee claimed for increasing by 5% the distribution to unsecured creditors under a confirmed plan over the amount which the debtor originally proposed to pay.

## FINDINGS OF FACT

1. On December 6, 1984, The Leonard Jed Company ["Jed Co."] filed the instant voluntary Chapter 11 bankruptcy petition. The debtor is a distributor of industrial hardware, tools, nuts and bolts. Mr. Leonard Jed has been president of the debtor for more than 20 years. *Second Amended Disclosure Statement* [P. 214].

2. On January 8, 1985, this Court appointed the law firm of Frank, Bernstein, Conaway & Goldman ["Frank, Bernstein"] as counsel to the official committee of unsecured creditors [P. 22]. Harvey M. Lebowitz is senior partner and the head of the firm's bankruptcy department.

3. Throughout the history of this case, the relationship between the debtor and counsel to the official unsecured creditors' committee has been antagonistic.

. 4. On July 23, 1985, Frank, Bernstein filed its first application for interim compensation [P. 108] on the same date as an objection [P. 109] on behalf of the committee of unsecured creditors to the debtor's disclosure statement. Thereafter, on August 19, 1985, the debtor filed an objection [P. 112] to the fee application. In its objection to fees, the debtor complained that creditors' committee counsel had not been cooperative with the debtor, had hampered the reorganization effort, was not committed to a successful reorganization, and exhibited a "hostile, overbearing and uncompromising attitude toward The Leonard Jed Company." *Objection*, ¶ 14 [P. 112]. "In-

deed," the debtor disclosed, "counsel to the creditors' committee has repeatedly threatened to file a motion to convert this case to Chapter 7." *Id.* ¶ 12. On March 4, 1986, the law firm of Semmes, Bowen & Semmes ["Semmes"], counsel to the debtor filed an application [P. 137] for interim allowance of compensation. Thereafter, on March 27, 1986, the creditors' committee filed an objection [P. 140] to the Semmes application. On August 20, 1986, before the date of the scheduled hearing on these matters, the committee filed a withdrawal of its objection [P. 150] and an amended fee application [P. 151] on behalf of Frank, Bernstein. On August 21, 1986, the debtor's counsel filed an amended application for compensation [P. 152] and a withdrawal [P. 153] of the debtor's objection to the fee application of Frank, Bernstein.

5. By Orders [PP. 158 and 159] dated September 22, 1986, the Court approved fees to counsel for the debtor-in-possession in the amount of $92,450.25 ($117,450.25 less a retainer of $25,000) and to creditors' committee counsel in the amount of $34,955.00, the latter amount for services rendered during the period ending June 30, 1986.[1]

6. On December 31, 1986, the debtor filed an application [P. 165] to employ Ellin & Tucker as accountants. The application was approved by Order [P. 166] of this Court dated January 8, 1987. The same date, the official unsecured creditors' committee filed an objection [P. 167] to the Ellin & Tucker application. On January 14, 1987, the committee filed a motion for reconsideration [P. 169] of the Order approving the employment of Ellin & Tucker and a request for hearing. On March 13, 1987, the committee filed an objection [P. 188] to the debtor's amended disclosure statement. On March 24, 1987, the Court signed an Order [P. 191] approving a stipulation of the parties by which the committee with-

drew its objection to the appointment of Ellin & Tucker, as accountants to the debtor. On July 18, 1987, the Court entered a Consent Order [P. 215] on objections to the debtor's amended disclosure statement.

7. On June 23, 1987, the creditors' committee filed a motion [P. 211] for contempt and sanctions against Leonard Jed and the Jed Co. On July 20, 1987, the committee filed a motion [P. 221] for the appointment of a Chapter 11 trustee. On July 27, 1987, the creditors' committee filed an objection [P. 238] to the debtor's proposed Chapter 11 plan and a motion to postpone [P. 237] the hearing on confirmation. The postponement was vigorously opposed by the debtor.[2] Therefore, the Court scheduled a chambers conference between the parties in an attempt to resolve the postponement issue. During the meeting held in chambers on July 28, 1987, the Court declined to postpone the confirmation hearing and initiated negotiations between the committee and the debtor on the issue of confirmation. The Court ascertained that the committee wanted a 20% distribution to general unsecured creditors rather than the 15% which the debtor-in-possession had proposed. At a second meeting in chambers on July 31, 1987, the debtor agreed to the creditors' committee demand.

8. During the ensuing month, counsel for the debtor and the committee settled their differences relative to confirmation of the Chapter 11 plan, appointment of a Chapter 11 trustee and the motion for contempt. On August 14, 1987, the committee filed *praecipes* [PP. 250, 251] withdrawing its motion for appointment of a Chapter 11 trustee and for postponement of the confirmation hearing. On August 24, 1987, at the conclusion of the confirmation hearing, this Court stated that confirmation would be granted to the debtor's Chapter 11 plan. On that occasion, Jay Shuster appeared on behalf of the committee and filed a with-

1. Despite the title of the fee application presently before the Court as the "Third Application," the Court notes that creditors' committee counsel has had only one interim fee application approved, namely the Amended Application [P. 151] which was approved by Order [P. 159] dated September 22, 1986.

2. The reason for the postponement request was the long-anticipated vacation of Mr. Lebowitz and his family. Normally, professional courtesy is extended to such a request by opposing counsel. That this was not done indicates the degree of animosity present here.

drawal [P. 260] of the committee's objection to confirmation.

9. At the hearing, Leonard Jed personally guaranteed the payment of all approved administrative expenses of the Jed Co. *Transcript,* p. 47 [P. 268].

10. On August 28, 1987, this Court entered an Order [P. 265] confirming the debtor's plan of reorganization.

11. On November 18, 1988, Frank, Bernstein, Conaway & Goldman filed the instant application [P. 318] for interim allowance of compensation for services rendered and reimbursement of expenses incurred as counsel to the official committee of unsecured creditors for the period from July 1, 1986 through October 31, 1988. By the instant application, counsel seeks fees in the amount of $62,999.50 and reimbursement of out-of-pocket expenses in the amount of $3,380.76. The services performed by counsel to the creditors' committee for which compensation is sought are summarized in the instant application[3] as follows:

    a. Counsel for the Committee reviewed and analyzed numerous[4] proposed compromises and settlement of claims by and against the Debtor, frequently negotiating changes in the terms of such agreements;

    b. Counsel for the Committee reviewed the Debtor's proposed Amended Disclosure Statement, drafted objections thereto, and negotiated amendments which resulted in the Debtor's Second Amended Disclosure Statement, which the Court approved;

    c. Counsel for the Committee objected to the Debtor's Amend [sic] Plan of Reorganization and engaged in intense litigation and negotiations with the Debtor during a two-and-a-half month period resulting in the amendment of the Debtor's Amended Plan of Reorganization and the filing of the Debtor's Second

Amended Plan of Reorganization, which improved treatment of general unsecured creditors. In connection with this litigation, Counsel for the Committee prepared and filed notices of depositions and requests for production of documents to the Debtor and its former and current accountants, in preparation for the confirmation hearing on the Second Amended Plan of Reorganization;

    d. Counsel for the Committee drafted the Motion for Contempt against the Debtor's president, Leonard Jed, for his failure to authorize release of funds for payment of professional fees of Debtor's counsel, Counsel for the Committee, and the Debtor's business consultant, in violation of the Court's order;

    e. Counsel for the Committee drafted the Motion for Trustee because of the apparent mismanagement of the Debtor, as reflected in significant write-downs of its inventory and receivables after the commencement of this case, the Debtor's substantial post-petition losses, and the conduct of the Debtor's president;

    f. Counsel for the Committee reviewed and analyzed daily reports, monthly operating reports, and aging receivable reports prepared by the Debtor;

    g. Counsel for the Committee investigated the dismissal of the Debtor's accounting firm in the middle of the case, and objected to the appointment of new accountants because of the lack of an explanation for the dismissal, and the additional expense to be incurred by the estate as the new accountants familiarized themselves with the Debtor's records. As a result of this investigation and objection, counsel for the Committee learned that the dismissal of the Debtor's accountants was related to the accountants' refusal to certify the Debtor's inventory; counsel for the Committee negotiated with the Debtors' new accountants to save the estate the additional cost

---

**3.** The application does not indicate the number of hours which counsel devoted to the completion of the various categories of services it claims to have performed, which has made more difficult the analysis of the reasonableness of the fee. Likewise, the application does not

indicate the dates the various services were performed.

**4.** The application speaks only in general terms regarding the number of various tasks performed, as opposed to a specific number.

of the new accountants familiarizing themselves with the Debtor's records;

h. Counsel for the Committee engaged in several meetings and numerous conversations with members of the Creditors' Committee and their counsel concerning the status of this case, and the terms of the Debtor's plan of reorganization and various amendments thereto;

i. Counsel objected to the application for final allowance of compensation of the Debtor's former accountants because of its failure to provide information essential to the making of an informed judgment. As a result of the objection, an amended application was filed providing the essential information [5]; and

j. Counsel for the Committee monitored and continues to monitor the case to determine the status of distributions to unsecured creditors, and to track the Debtor's financial performance.

*Third Application,* ¶ 7 [P. 318].

12. On December 8, 1988, the debtor filed the instant objection [P. 322] to Frank, Bernstein's application. The essential grounds for the objection are set forth in paragraphs 7, 11, 14 and 15:

[7.] The third application is objectionable because counsel to the creditors' committee has not performed services which have benefited the Debtor's estate, the services rendered by counsel to the committee have not been reasonable and necessary, and counsel to the committee has failed to allocate the more routine services rendered to the committee to more junior level attorneys.

[11.] The third application states that counsel for the committee has devoted 542.80 hours in rendering services to the Committee through October 31, 1988. Without counsel's time records, it is impossible to determine what hours were spent performing what services. However, it is clear that counsel for the committee spent too much time on a case in which the Debtor's resources were and still are exceedingly limited.

[14.] The third application is objectionable because it provides only very broad summaries of work done and hours logged.

[15.] The claimed disbursements of $3,380.76 are objectionable because they include meals expense of $89.00, secretarial overtime of $259.09 and Lexis or Westlaw computer research charges of $232.72. Neither secretarial overtime, computer research charges, nor meals expense are proper items for reimbursement.

13. At a hearing on March 30, 1989, this Court heard arguments of counsel on the application and objection. No witnesses testified. Items of documentary evidence were introduced, including the time records of Frank, Bernstein reflecting the expenditure of hours in the instant case from July 1, 1986 through October 31, 1988.

CONCLUSIONS OF LAW

1. The award of compensation to professional persons who perform services to a bankruptcy estate is a "core proceeding" arising under Title 11 of the United States Code which bankruptcy judges may hear and determine. 28 U.S.C. § 157(b)(1), (b)(2)(A), (B) and (O) (Supp. V 1987).

2. Approval of interim compensation to creditors' committee counsel is governed by Sections 328(a), (c), 330(a) and 331 of the Bankruptcy Code.[6]

(a) The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis, notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions under the conclusion of such employment, if such terms and

---

**5.** Both the debtor and the committee filed objections to the accountant's fee application. The committee's objection was more detailed than the debtor's and included complaints about the accounting firm's failure to allocate more routine work to its junior members, the lack of specificity of the application, and the accountant's failure to submit detailed time records in support of the application.

**6.** § 328. Limitation on compensation of professional persons.

■ 3. The determination of what is reasonable compensation for actual, necessary services and what are actual, necessary expenses for purposes of reimbursement is within the sound discretion of the bankruptcy court. *In re AOV Industries, Inc.*, 43 B.R. 468 (D.D.C.1984).

■ 4. The burden of proof that services were actual and necessary and that the compensation requested is reasonable always rests upon an applicant who seeks the payment of professional fees from a bankruptcy estate, regardless of whether an objection has been filed. *See In re Metro Transportation Co.*, 78 B.R. 416, 420 (Bankr.E.D.Pa.1987); *In re Pettibone Corp.*, 74 B.R. 293 (Bankr.N.D.Ill.1987).

■ 5. "In determining whether a particular expense is chargeable to the debtor's estate, the court must distinguish between 'overhead' expenses, which are not reimbursable, and 'out-of-pocket' expenses, which are. *In re Thacker*, 48 B.R. 161, 164 (Bankr.N.D.Ill.1985). Overhead expenses are those day-to-day operating costs which are incurred regardless of whom the law firm represents. *Id.* ... Out of pocket expenses are those expenses which can clearly be traced to a particular client...."

*In re Island Helicopter Corp.*, 53 B.R. 71 (Bankr.E.D.N.Y.1985) (holding that out of pocket expenses reimbursable to creditors' committee counsel include photocopy charges, but not costs of meals, secretarial overtime and cab fare where the necessity for them was not established). Counsel's justification for charging the estate $80 for meals and $259.09 for secretarial overtime is that this is Frank, Bernstein's routine practice and also that "the Debtor's counsel apparently follows similar practices." *Memorandum*, ¶ E, [P. 328]. The Court's response is that merely because these practices are routine does not convert overhead expenses to out of pocket expenses.

However, counsel argues that because the Court allowed Semmes to recover overtime expenses, "the previous allowance is the law of the case." *Id.* This assertion is unsupported by any authority and is not correct. The issue was never raised, but in any event, the Court has authority to "reexamine and adjust" interim allowances of administrative expenses during the course of a case. *See 2 Collier on Bankruptcy* ¶ 331.03 (15th ed. 1988), *citing* § 503.

Reimbursement for meals and secretarial overtime will be disallowed where the applicant has shown no compelling need to pro-

---

conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

\* \* \* \* \* \*

(c) Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

\* \* \* \* \* \*

§ 330. Compensation of officers.

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney

(1) reasonable compensation for actual, necessary, services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

\* \* \* \* \* \*

§ 331. Interim compensation.

A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C. §§ 328(a), (c), 330(a), and 331 (Supp. V 1987).

vide them in the first place. The Court will allow reimbursement for photocopying and computer research attributable to work done for this particular client, but not for postage, telephone or messenger services which are costs of doing business. *See In re Metro Transportation Co., supra; Cf. In the Matter of D'Lites of America, Inc.,* 92 B.R. 554 (Bankr.N.D.Ga.1988).

6. "Lodestar" principles guide the Federal courts in this circuit in considering applications for compensation by attorneys. *See Barber v. Kimbrell's, Inc.,* 577 F.2d 216 (4th Cir.1978), *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978), applying criteria originally set forth in the leading case of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). The *Johnson* criteria are:

1. The time and labor required.
2. The novelty and difficulty of the questions.
3. The skill requisite to perform the legal services properly.
4. The preclusion of other employment by the attorney due to the acceptance of the case.
5. The customary fee.
6. Whether the fee is fixed or contingent.
7. Time limitations imposed by the client or the circumstances.
8. The amount involved and the results obtained.
9. The experience, reputation and ability of the attorneys.
10. The "undesirability" of the case.
11. The nature and length of the professional relationship with the client.
12. Awards in similar cases.

*Id.* at 717–19.

In the case of *Anderson v. Morris,* 658 F.2d 246 (4th Cir.1981), the Fourth Circuit Court of Appeals further explained the application of lodestar principles by endorsing two later Fifth Circuit cases decided after *Johnson* which held that courts reviewing fee applications should

... ascertain the nature and extent of the services supplied by the attorney from a statement showing the number of hours worked and an explanation of how these hours were spent. The court should next determine the customary hourly rate of compensation. These are essentially *Johnson* factors 1 and 5. The court should then multiply the number of hours reasonably expended by the customary hourly rate to determine an initial amount for the fee award. Finally, the court should adjust the fee on the basis of the other factors, briefly explaining how they affected the award. *In re First Colonial Corp. of America,* 544 F.2d 1291, 1298–1300 (5th Cir.1977). *See also Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575, 581–84 (5th Cir.1980).

*Id.* at 249.

In *Harman v. Levin,* 772 F.2d 1150 (4th Cir.1985), the court held that the 12 *Johnson* factors are applicable to the determination of proper awards of counsel fees in bankruptcy cases.

7. *Time and labor required.* The Court's analysis begins with a review of counsel's fee application and time records to attempt to discern whether the amount of time claimed to have been expended is reasonable in light of what counsel did. The application contains only broad summaries of services performed and does not detail the quantity of time devoted to each category. Counsel's failure to submit its time records until the hearing on the application deprived the debtor of the opportunity to review them in advance and to either withdraw its objections or to raise further objections. It deprived the Court of the opportunity to properly study the records and to question counsel at the hearing with respect to deficiencies in the records which the Court perceives. The failure to call witnesses to testify as to the "actual" and "necessary" character of various services performed deprives the Court of the information required to fill in many of the gaps found to exist in the application and the time records. Indeed, the Court finds that the applicant has failed to carry its burden of proof that the time it spent on this case was reasonable, for a variety of reasons, which are addressed as follows.

■ (a) *Deficiencies in the application.* As implicitly indicated earlier, the fee application lacked specificity regarding how much time was spent performing various categories or services. The application indicates only the total number of hours claimed and makes no reference to specific time charges contained in the time records. The instant application covers a period of 28 months inclusive (July 1, 1986 through October 31, 1988) and yet its description of services rendered covers fewer than three double-spaced typewritten pages.

■ (b) *Deficiencies in the time records.* In order to determine whether counsel's time charges are reasonable, the Court must be able to figure out what the individual attorneys did and whether the services they performed were actual, necessary and beneficial to the estate, and therefore compensable. Various deficiencies in the time records in this case prevent the Court from determining reasonableness. [The time records and the Court's analysis of them are contained in the *Appendix.*]

(1) *Insufficient descriptions.* Eighty entries in the time records are found to describe so insufficiently the services performed that the Court is unable to determine whether the time spent performing them justifies the granting of compensation for their performance. Examples of this include such designations, as "TEL W/OTHER T—LEONARD SACHS," which the Court assumes indicates that a telephone conversation was conducted with the named person; "RESEARCH" without any further information; and "ORDER/JUDG-MENT Order Appr. Fees," which does not begin to convey to the Court precisely what counsel did. *In re Pettibone Corp.,* 74 B.R. 293, 303 (Bankr.N.D.Ill.1987); *In re Wildman,* 72 B.R. 700, 710 (Bankr.N.D.Ill. 1987); *In re Four Star Terminals, Inc.,* 42 B.R. 419, 435 (Bankr.D.Alaska 1984).

(2) *Lumping.* This term refers to the grouping of different tasks within one block of time on a time record. It is a practice universally disapproved by bankruptcy courts for two reasons. One, it permits an applicant to claim compensation for rather minor tasks which, if reported individually, would not be compensable. Two, it prevents the Court from determining whether individual tasks were expeditiously performed within a reasonable period of time because it is impossible to separate into components the services which have been lumped together. The Court has found approximately sixty occurrences of "lumping" in this fee application and, with a few exceptions, will disallow all of them. *In re Seneca Oil Co.,* 65 B.R. 902, 909 (Bankr.W.D.Okla.1986); *In re Woerner,* 67 B.R. 685, 687 (Bankr.E.D.Pa.1986); *In re Wildman,* 72 B.R. at 709; *In re Bible Deliverance Evangelistic Church,* 39 B.R. 768, 777 (Bankr.E.D.Pa.1984); *In re Pettibone Corp.,* 74 B.R. at 302; *In re Metro Transportation Co.,* 78 B.R. at 418.

(3) *Duplication of effort (double-billing).* The Court notes a number of instances reflected in the time records where more than one attorney has billed for the same service. Examples include office conferences of two or more attorneys where all of the participants charged their full hourly rates; meetings with others where more than one attorney from the firm was in attendance and both submitted bills for the same meeting without demonstrating the need for both of them to have been there. Time spent by partners and associates in conferences and meetings is compensable, but not by more than one participant. *In re Pettibone Corp.,* 74 B.R. at 307; *In re Metro Transportation Co.,* 78 B.R. at 417–18; *Cf. In re Yankee Seafood Corp.,* 53 B.R. 285, 286 (Bankr.R.I.1985) and cases cited.

(4) *Failure to exercise billing judgment.* Not everything which creditors' committee counsel does in a bankruptcy case is chargeable to the estate, either because it confers a negligible benefit upon the estate or because it is excessive. Normally, counsel who represents a private client exercises what the courts refer to as "billing judgment" by "writing off" charges for certain things.

"The United States Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), a non-bankruptcy matter, stated that attorneys

714

applying to a court for statutory attorney's fees

should make a good faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary; just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. 'In the private sector, "billing judgment" is an important component in fee setting. It is no less important here.'

*Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939–40 *quoting Copeland v. Marshall*, 205 U.S. App.D.C. 309, 401, 641 F.2d 880, 891 (1980) (en banc) ...'' Quoted in *In re Pettibone Corp.*, 74 B.R. at 303.

The time records submitted in support of Frank, Bernstein's fee application do not evidence the exercise of any billing judgment in that nothing appears to have been written off. In the absence of such evidence, the Court will exercise its own billing judgment by writing off various efforts which ought not to have been charged to the estate as being either totally non-productive or of negligible benefit. *In re Wildman*, 72 B.R. at 711; *In re Woerner*, 67 B.R. at 688.

(5) *Non-productive document review.* Counsel charged the estate for reading documents prepared by others, including motions and notices for approval of compromises of disputed claims prepared by debtor's counsel; other motions prepared by other counsel; the debtor's daily and monthly financial reports; and review of files. The Court has generally disallowed all compensation for this activity, except where it appeared that counsel actually fashioned a formal response which required the performance of substantive work. Otherwise, the Court is unable to find a benefit to the estate from merely reviewing what others have done, (including counsel to the debtor, the approval of whose compensation as an administrative claim against the estate would be duplicative). Creditors' committee counsel claims entitlement to fees for its review of the settlement of claims by the debtor because it says that it renegotiated many of these on terms more favorable to the estate.

However, neither the application nor the time records identify which claims were so compromised and in the absence of such specificity, the Court will deny compensation for the mere review of settlements worked out by the debtor where no further substantive effort by committee counsel is evident from the record. *In re Pettibone*, 74 B.R. at 303; *In re Wildman*, 72 B.R. at 710.

(c) *Some services not shown to be beneficial to the estate.* Counsel claims that the debtor's financial condition and lack of cooperation required "intense litigation," which in turn required "extensive commitment of time." *Application*, ¶ 6 [P. 318]. However, the Court finds that more emphasis on negotiation and less time spent litigating would have produced a result as good as that which was obtained with greater economy of time and resources, because it was negotiation which permitted the debtor's plan to be confirmed and thereby brought about the chance for a successful reorganization. Much of the litigation was fruitless and ended up being voluntarily withdrawn when negotiation brought about compromise, settlement and ultimately confirmation. Examples of such litigation include the motions for contempt and for the appointment of a Chapter 11 trustee and all the discovery requests which attended them.

The motion for the appointment of a trustee which counsel to the creditors' committee filed is not compensable because it cannot be shown to have conferred a benefit upon the estate. Rather it was an unnecessary diversion that burdened the estate. The motion appears to have been a strategic tactic designed to put pressure on the debtor in order to achieve more favorable treatment for the unsecureds under the plan. The Court reaches this conclusion because (1) the filing of the motion occurred on the eve of the confirmation hearing, even though much of the information upon which the motion was based was within the committee's knowledge at a point early in the case (at least a year earlier); (2) the committee withdrew the motion as soon as the debtor capitulated to its demands for an increased payout to

general unsecured creditors; and (3) the motion was a transparent attempt to fashion a cause of action under Section 1104 from facts which on their face appear to be neutral. However, the Court need not address the issue of whether the motion was filed in good faith, because compensation for its preparation must be denied on an alternative ground. In order to find that the filing of the motion was the cause of the debtor's increased distribution to unsecureds, the Court would have to indulge in "pure conjecture and speculation." *Cf. In re Terex*, 70 B.R. 996, 1002 (Bankr.N.D. Ohio 1987) (creditors' committee's counsel's "belief that the $8 million payment to unsecured creditors under the plan is the result of its solitary efforts and willingness to engage GM in litigation is based upon pure conjecture and speculation").

Proper representation of the creditors' committee in this case did not require the time and labor which counsel expended. Based upon the Court's review of counsel's time records, it is determined that the number of hours reasonably required for counsel to properly represent the creditors' committee is 117.5, apportioned among the Frank, Bernstein attorneys as follows:

| Attorney | Number of Hours Reasonably Required | Number of Hours Claimed |
|---|---|---|
| Harvey M. Lebowitz | 47.8 | 163.8 |
| Jay A. Shulman | 8.8 | 38.1 |
| Joseph A. Guzinski | 46.6 | 166.6 |
| Paula K. Merkle | 14.3 | 35.1 |
| Josef E. Rosenblatt | + 0 | + 5.4 |
| Subtotal | 117.5 | 409.0 |
| Paralegals | +133.8 | +133.8 |
| TOTAL | 251.3 | 542.8 |

8. The next step in computing the lodestar is a decision regarding a reasonable rate to be properly charged for the actual and necessary services rendered by counsel. *In re Wildman*, 72 B.R. at 712. In order to make this decision, the Court must first determine counsel's customary fee for the services performed.

9. *The customary fee.* The Court notes that the applicant has claimed that it customarily charges the same average hourly rates which it charged in this case for services rendered by the following individuals:

| NAME | POSITION | AVERAGE HOURLY RATES |
|---|---|---|
| Harvey M. Lebowitz | Partner | $186.35 |
| Jay A. Shulman | Partner | 128.12 |
| Joseph A. Guzinski | Associate | 94.23 |
| Paula K. Merkle | Associate | 101.34 |
| Josef E. Rosenblatt | Associate | 110.00 |
| Kathleen G. McCruden | Paralegal | 57.81 |
| Karen J. Fry | Paralegal | 45.00 |
| Patricia L. Adams | Paralegal | 40.00 |

*Application,* § 8 [P. 318]

10. The lodestar, or basic fee, in the instant case (exclusive of paralegal fees) is $15,875.27, which is computed by multiplying the reasonable number of hours of each attorney times the customary hourly fee of each, as follows:

| ATTORNEY | REASONABLE HOURS | × | CUSTOMARY RATE | | |
|---|---|---|---|---|---|
| Harvey M. Lebowitz | 47.8 | × | $186.35 | = | $ 8,907.53 |

| ATTORNEY | REASONABLE HOURS | × | CUSTOMARY RATE | | |
|---|---|---|---|---|---|
| Jay A. Shulman | 8.8 | × | $128.12 | = | $1,127.46 |
| Joseph A. Guzinski | 46.6 | × | 94.23 | = | 4,391.12 |
| Paula K. Merkle | 14.3 | × | 101.34 | = | 1,449.16 |
| Josef E. Rosenblatt | 0 | × | 110.00 | | 0 |
| | | | TOTAL | | $15,875.27 |

Allowing for paralegal fees in the full amount claimed of $7,677.50, the lodestar totals $23,552.77.

11. *Novelty and difficulty of the questions.* The case presented no novel legal issues to creditors' committee counsel. Despite its assertion that "this case has presented a number of difficult problems," the Court finds nothing to distinguish this case from any number of fairly routine Chapter 11 reorganization cases. The debtor's substantial write-down of inventory and prepetition receivables does not make this a difficult case. Every Chapter 11 creditors' committee has the responsibility of constantly monitoring a debtor-in-possession. Such monitoring presupposes some services which are routine and non-legal in nature.

12. *Skill requisite to perform the legal services properly.* Frank, Bernstein is a highly-esteemed law firm with an excellent bankruptcy department. It produces work of a consistently high quality and its attorneys who appear before this Court are capable, prepared and highly respected. Nevertheless, the instant case did not require the highest degree of skill in the performance of legal services to the creditors' committee.

Counsel to the creditors' committee did not staff this case economically where services expended by the firms's highest-paid partner accounted for nearly one-half of the requested fee amount ($30,523.50 out of $62,999.50). The Court has minutely examined the time records submitted in support of the fee application and notes that they contain 180 separate entries for Harvey Lebowitz; 83 for Joseph A. Guzinski (associate); 75 for Paula Krahn Merkle (associate); 30 for Jay A. Shulman (partner); and 4 for Josef E. Rosenblatt (associate). The records confirm the debtor's allegation that the law firm failed to properly assign routine duties to its more junior attorneys in order to reduce the cost of representation. Mr. Lebowitz's average hourly rate was $186.35 for services rendered in this application. The actual rate ranged from $160 per hour in July, 1986, to $175 per hour in September, to $200 per hour as of July 1, 1987, and peaked at $210 per hour in March, 1988. The rates are not unreasonable in and of themselves for an attorney of Mr. Lebowitz's reputation and experience. The problem comes when one examines the nature of the work for which he is charging the rates.

The records disclose that telephone calls[7], analysis of "daily reports," drafting of fee applications and notices of settlements are all matters to which Mr. Lebowitz personally attended. Such matters should have been delegated to subordinates. They do not require for their performance the level of expertise possessed by Mr. Lebowitz. These tasks should not be compensated at the full hourly rates charged by the chief partner of Frank, Bernstein's bankruptcy department, which rates are at the upper range of fees charged in this jurisdiction. *See In re Pettibone Corp.*, 74 B.R. at 303 ("a senior partner who spends time reviewing documents or doing research a beginning associate could do will be paid at the rate of a beginning associate").

7. The nature, purpose and substance of the telephone calls is not disclosed, which is a shortcoming of the time records. *In re First Software Corp.*, 79 B.R. 108 (Bankr.D.Mass.1987); *In re Pettibone Corp., supra.* This criticism does not apply to one entry which is dated "7–02–87" entitled "attempt to contact Herb Better" for which Mr. Lebowitz charged $40. The Court cannot imagine this service being compensable under any circumstances. *Time Records*, Lebowitz entry 100, Frank, Bernstein Exhibit No. 1.

However, because there were a number of tasks performed by Mr. Lebowitz which benefited the estate and which required his extensive abilities, those services have been allowed at the full rate. Such services as face-to-face meetings with debtor's counsel would seem to have required his presence. On the other hand, for the numerous routine services which he performed including the review of the work product of other attorneys (including counsel to the debtor), the Court has exercised its discretion by either disallowing compensation entirely or by significantly reducing the rate at which Mr. Lebowitz charged his time.

Likewise, while the preparation of fee applications is compensable, the rate of compensation ought to be much lower than that chargeable for complex legal work. *In the Matter of Rego Crescent Corp.*, 37 B.R. 1000 (Bankr.E.D.N.Y.1984) (rate of $50 per hour allowed).

Bankruptcy Judge Richard L. Bohannon, speaking in the case of *In re Seneca Oil Co.*, 65 B.R. 902 (Bankr.W.D.Okl.1986), espoused the position that courts should not second-guess the delegation of duties to various attorneys in a law firm, subject however to a significant proviso:

> ... Where a court chooses to delineate between ministerial and legal tasks it necessarily directs the manner in which attorneys manage their firms. Such delineation would encumber daily management decisions concerning the activities attorneys will pursue. It also requires attorneys to assign personnel to tasks based on some imposed job description rather than the efficacies and urgencies of the situation. This is beyond the court's duty to assure reasonable fees. We feel it is best to leave managerial

decisions to the law firms. Therefore, decisions concerning which tasks an attorney performs and involving the allocation of personnel toward the efficient and effective completion of tasks will be left to the discretion of the professional *unless the allocation is egregious.* *In re Jensen–Farley Pictures*, 47 B.R. 557 (Bankr.D.Utah 1985). Attorneys should adhere to standards which will efficiently use their high level of training, effectively resolve a problem, and obtain the best results for their clients at a reasonable fee. [Emphasis supplied.][8]

*Id.* at 911.

13. *Preclusion of other employment.* Counsel was not precluded from other employment by taking on the job of representing the creditors' committee in this case, especially where the Court has found that a rather minor amount of time was reasonably required to perform the necessary services attendant to that representation. The Court notes from its own docket that these same members of the bankruptcy department of Frank, Bernstein regularly appeared in numerous other matters and assumed major roles in many other cases, among which was the memorable *Eastmet* case.

14. *Whether the fee is fixed or contingent.* Counsel says that "in taking this case, Counsel expected that it would be paid in full for services rendered in accordance with Counsel's usual hourly rates. Counsel did not expect to undertake this case on a contingent fee basis." *Id.,* ¶ 12. However, the Order by which the application of the creditors' committee to employ Frank, Bernstein was approved clearly stated that "the compensation of Frank, Bernstein, Conaway & Goldman shall be

---

**8.** The cited case of *Jensen–Farley, supra,* held, among other things, that routine services, including telephone conversations, correspondence and attendance at meetings should be compensated at the same high rate as other strictly legal services; that the staffing of a case by counsel ought not be second-guessed by the court; and that reimbursement for meals, word processing, messenger service, legal computer costs and even taxi fare and parking ought not be denied reimbursement as overhead. However, the problem with these pronouncements

by the *Jensen–Farley* court is that they are all *obiter dicta,* because there was no controversy which required a decision on these issues. The real issue in *Jensen–Farley* was whether pre-petition legal expenses incurred by an unofficial creditors' committee in an unsuccessful workout attempt ought to be compensated by the bankruptcy estate. The opinion held that such legal services were not compensable where the estate received no benefit from them. Not one penny in fees or expenses was approved as a result of the *Jensen–Farley* opinion.

subject to the approval of this Court." *Order* of January 8, 1985 [P. 22]. In this sense, the fee is contingent upon its approval by the Court and whether funds exist from which the fee can be paid. The fee is not fixed because there is no agreement which has been disclosed to pay a certain amount to the law firm. Counsel's expectations that it will be paid does not affect whether its claimed fees are fixed or contingent. The fee in the instant case is contingent because of the substantial risk of nonpayment. The Court will take this risk factor into consideration by raising the amount of the lodestar.

15. *Time limitations imposed by the client or the circumstances.* Except for a flurry of activity shortly before the debtor's Chapter 11 plan achieved confirmation, there does not appear to have been any urgency for counsel to perform on behalf of the creditors' committee. There were no time constraints imposed by the committee as far as the Court can divine.

16. *Amount involved and results obtained.* According to the debtor's Schedule A–3 ("Creditors having Unsecured Claims Without Priority"), The Jed Co. owed unsecured debts in the aggregate amount of $4,135,868.41. *Statement of Financial Affairs and Schedules* [P. 37]. Under the terms of the debtor's Second Amended Plan of Reorganization [P. 242], Class IV unsecured creditors are to receive a 20% distribution within four years from date of confirmation. Therefore, assuming unsecured debt in the full amount stated, the total amount distributable to unsecured creditors under the plan is $827,173.68. Counsel to the creditors' committee claims the credit for achieving a 5% increase in the amount unsecured creditors will receive ($206,793.42) under the plan and for shortening the time for distribution from five years to four years and claims to be entitled to a bonus for its efforts. However, it was *the Court* which brought the parties together and initiated a settlement of differences, including the debtor's agreement to pay more. The parties on their own initiative should have come to the bargaining table, without the necessity of involving the Court. *Cf. In the Matter of Baldwin–United Corp.,* 79 B.R. 321 (Bankr.S.D. Ohio 1987) (enhanced fee award to creditors' committee counsel held justified in exceptionally complex case where counsel's superior skill and judgment avoided needless court contests and led to a consensual plan of reorganization).

Bankruptcy Judge Harold F. White expressed perfectly the thoughts of this Court regarding the request for premium fees in the instant case when he wrote in *In re Terex, supra:*

> ... The court does not find that this case is an appropriate one for the award of a bonus, and has serious doubt as to whether an occasion will soon arise when the award of a bonus is necessary to award a "reasonable' fee. Attorneys in private practice do not bill their clients for a lump sum bonus based upon good results achieved. Presumably, that is what they are hired to accomplish. The closest analogy which can be made is the award of a contingency fee for successful litigation or settlement. But the risk is zero payment, and that risk was not present here.

70 B.R. at 1003.

Nevertheless, counsel's participation in negotiation with the debtor did achieve a favorable result for the unsecured creditors and those efforts ought to be rewarded. For this reason, time spent in negotiation as disclosed in the time records has been compensated at the highest rates charged. The Court emphasizes, however, that this is not a bonus but merely recognition of one of the factors to be taken into consideration.

17. *Undesirability of the case in the legal community.* Representation of the unsecured creditors' committee in this case would be a most welcome undertaking to most members of the bankruptcy bar.

18. *Nature and length of the professional relationship with the client.* This client is a statutorily-created committee under the Bankruptcy Code which counsel was engaged to represent by court order some four and one-half years ago. *Order of January 8, 1985* [P. 22].

19. *Awards in similar cases.* The amount claimed by Frank, Bernstein as interim fees in the instant application ($62,-999.50) is much greater than the interim fees paid to creditors' committee counsel in similar cases. It is also nearly twice as large as the other interim fee award ($34,-955.00) which it received for services rendered during the first 18 months of this case. *Order of September 22, 1986* [P. 159]. (The Court is aware of the fact that the instant application covers a period of 28 months. Nevertheless, counsel performed most of its compensable services before confirmation of the plan, during the first 14 months of the 28–month period.) However, the lodestar amount of $23,552.77 appears to be *less* than what the Court would allow to creditors' committee counsel in a similar case of this size. Therefore, an upward adjustment of the lodestar is warranted on this ground.

20. *Adjusting the lodestar.* From the foregoing analysis, it must be clear by now that the award of compensation under a lodestar analysis is far from scientific. The Court in the careful exercise of its discretion has determined the lodestar in this case to be significantly below the interim fee which counsel has requested, for the various reasons stated. However, the Court must determine the actual fee to be awarded in light of the 12 *Johnson* factors. Some of those made no appreciable difference (novelty of questions, requisite skill, preclusion) because the Court had already implicitly considered them in determining the lodestar.

However, consideration of the risk of nonpayment and awards in similar cases requires that the lodestar be increased. The amount of the upward adjustment based upon the risk factor is $5,888.19, or 25% of the lodestar. This brings the award up to $29,440.96. Taking into consideration the size of awards in similar cases, the Court will add an additional $5,000 for a fee award in the total amount of $34,-440.96.

This award is based also upon the Court's own notions of fundamental fairness and its recognition of the unique facts in the instant case. To say that this Court is intimately familiar with the parties, their attorneys and what went on in this case is an understatement. The undersigned judge has lived with this case from the day it was filed, has presided over every chambers conference and trial and has executed every order which appears in the voluminous case file. The philosophy of the Court regarding the allowance of counsel fees is to fairly compensate bankruptcy attorneys at the highest rate possible within reasonable limits but also to remind counsel that some services are too routine or of negligible benefit to the estate to be compensated at all; to discourage duplication of services by refusing to compensate duplicate services on the ground that they are inherently unnecessary; to recognize the value of negotiation and compromise by compensating such services at the same rate as time spent in litigation; to encourage proper delegation of more routine duties to lower echelon attorneys; and to require, to the greatest degree possible, the precise and accurate recording of time spent working on a case. The Court has no punitive purpose in the exercise of its discretion in this or in any other case.

ORDER ACCORDINGLY.

ORDER SUSTAINING DEBTOR'S OBJECTION TO ALLOWANCE OF THIRD APPLICATION FOR INTERIM COMPENSATION TO CREDITORS' COMMITTEE COUNSEL

Based upon the foregoing Opinion entered simultaneously herewith, it is

ORDERED that the debtor's objection to allowance of the third application for interim compensation to creditors' committee counsel is hereby SUSTAINED; and it is further

ORDERED that interim compensation is hereby allowed to Frank, Bernstein, Conaway & Goldman in the amount of $34,-440.96 as a fee for services rendered, and $2,578.88 as reimbursement of expenses incurred during the period from June 30, 1986 through October 31, 1988.

APPENDIX - DISALLOWANCE/REDUCTION IN TIME CHARGES OF FRANK, BERNSTEIN IN THE LEONARD JED CO. CHAPTER 11

NAME OF ATTORNEY: HARVEY M. LEBOWITZ

| ITEM NO. | DATE | SERVICES DESCRIBED IN TIME RECORDS | HOURS CLAIMED | AMOUNT CHARGED | AMOUNT ALLOWED | REASON FOR ALLOWANCE, DISALLOWANCE OR REDUCTION |
|---|---|---|---|---|---|---|
| 1 | 07/15/66 | MOTION Motion for approval of Settlement re: Clow Corp. | 0.3 | 48.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 2 | 07/17/66 | ORDER/JUDGMENT Order approving comp. re: Clow.Corp. | 0.2 | 32.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 3 | 07/23/66 | CONF-INTRA-OFFICE C-PKM | 0.5 | 80.00 | 0 | OFFICE CONFERENCE - DUPLICATIVE |
| 4 | 07/24/66 | REVISE/REDRAFT/AMEND CONF-INTRA-OFFICE Review Discl.St. ? a m. Pl and C-PKM | 1.3 | 208.00 | 0 | CONFERENCE/DOCUMENT REVIEW/LUMPING |
| 5 | 07/25/66 | CONF-INTRA-OFFICE REVISE/REDRAFT/AMEND C-PKM,review & revise @ D. S. & planJT-David Musgrave | 1.5 | 240.00 | 0 | CONFERENCE/DOCUMENT REVIEW/LUMPING |
| 6 | 07/31/66 | REVISE/REDRAFT/AMEND SEARCH/PLAN/PREPARE Prep. of appl.for fee | 1.2 | 192.00 | 60.00 | $50/HR. RATE FEE APPLIC. PREPARATION |
| 7 | 08/01/66 | NOTICES Notice of Settlement (Arr ow Lock Co.) | 0.2 | 32.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 8 | 08/12/66 | REVISE/REDRAFT/AMEND Review of Plan,Discl St. & appl. for fee | 2.5 | 400.00 | 125.00 | SHOULD DISALLOW FOR LUMPING, BUT WILL ALLOW $50/HR FOR FEE APPLICATION |
| 9 | 08/12/66 | SEARCH/PLAN/PREPARE Review & revise appl.for fee, FJC&G | 0.6 | 96.00 | 30.00 | FEE APPLICATION PREPARATION |
| 10 | 08/15/66 | SEARCH/PLAN/PREPARE CONF-INTRA-OFFICE Review, revise Discl .St. & plan;C-PKM;T-Dave Musgrave | 2.5 | 400.00 | 0 | LUMPING |
| 11 | 08/20/66 | STUDY/ANALYZE Withdrawl of objection; order approving sett. with Arrow Lock | 0.2 | 32.00 | 0 | LUMPING |
| 12 | 08/21/66 | CONF MTG w OTHERS NEGOTIATE C-David Musgrave | 1.3 | 208.00 | 208.00 | NEGOTIATION |
| 13 | 08/26/66 | TEL w/OTHER T-Leonard Sachs | 0.3 | 48.00 | 0 | INSUFFICIENT DESCRIPTION |
| 14 | 08/26/66 | MOTION Motion for Appr. of Settl mt.(Pacific Mutual Door Co.) | 0.2 | 32.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 15 | 09/15/66 | CORRESP OTHER STUDY/ANALYZE L-fr.Robert Federlineratt y. to r credIint.Fin.Report | 0.6 | 105.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 16 | 09/23/66 | ORDER/JUDGMENT Order Appr.Fees | 0.2 | 35.00 | 0 | INSUFFICIENT DESCRIPTION |
| 17 | 09/23/66 | TEL w/OTHER T-D. Musgrave re:payment of fees | 0.2 | 35.00 | 35.00 | ADEQUATE DESCRIPTION |
| 18 | 10/03/66 | MEMORANDUM TO PARTNER, ASSOCIATE OR PARALEGAL CONF-INTRA-OFFICE Memo fr.PKM re: advances by & payments to L.Jed;L-PKM | 0.5 | 87.50 | 43.75 | 1/2 RATE FOR INTER-OFFICE MEMO |
| 19 | 10/06/66 | REVISE/REDRAFT/AMEND Review & revise L-to Musg rave re:cost petition loans & payments to Jed | 0.3 | 52.50 | 52.50 | ADEQUATE DESCRIPTION |
| 20 | 10/07/66 | TEL w/OTHER CORRESP OTHER T-Musgrave;L-Musgrave | 0.5 | 87.50 | 0 | INSUFFICIENT DESCRIPTION |
| 21 | 11/04/66 | STUDY/ANALYZE Review Plan & Discl.st. | 1.3 | 227.50 | 227.50 | ALLOWED BECAUSE OBJECTION WAS FILED |
| 22 | 11/05/66 | CONF-INTRA-OFFICE C-PKM,review of plan | 0.4 | 70.00 | 0 | CONFERENCE - DUPLICATIVE |
| 23 | 11/07/66 | REVISE/REDRAFT/AMEND STUDY/ANALYZE Review Discl.St. | 0.7 | 122.50 | 122.50 | ALLOWED-OBJECTION FILED TO DISC. STATEMENT |
| 24 | 11/14/66 | TEL w/OTHER CORRESP OTHER T-David Musgrave; L-to cr ed. com m; L-to David Musgrave | 1.0 | 175.00 | 0 | INSUFFICIENT DESCRIPTION/LUMPING |
| 25 | 11/17/66 | CORRESP OTHER L-To D. Musgrave | 0.2 | 35.00 | 0 | INSUFFICIENT DESCRIPTION |
| 26 | 11/16/66 | CORRESP CLIENT Letter to creditors committee | 0.2 | 35.00 | 35.00 | ATTORNEY COMMUNICATION W/CLIENT |
| 27 | 11/19/66 | MOTION Motions for Appr. of Comp .of Claims (Cusineno & Kay ser Const.) | 0.3 | 52.50 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 28 | 11/25/66 | STUDY/ANALYZE Daily reports | 0.5 | 87.50 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 29 | 11/26/66 | STUDY/ANALYZE Daily reports | 0.3 | 52.50 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 30 | 12/01/66 | TEL w/OTHER T-Musgrave | 0.3 | 52.50 | 0 | INSUFFICIENT DESCRIPTION |
| 31 | 12/03/66 | STUDY/ANALYZE Daily Reports | 0.2 | 35.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 32 | 12/03/66 | CORRESP CLIENT L from Paula to Rosanste in (Brighton- Best) | 0.2 | 35.00 | 0 | DUPLICATIVE |
| 33 | 12/11/66 | STUDY/ANALYZE Daily reports | 0.2 | 35.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 34 | 12/11/66 | Meeting - Aibright, Jas & Jed | 3.0 | 525.00 | 525.00 | NEGOTIATION |
| 35 | 12/19/66 | CORRESP OTHER Daily reports;C-KGW | 0.5 | 75.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW/LUMPING |
| 36 | 12/27/66 | STUDY/ANALYZE Daily reports | 0.2 | 35.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |

## APPENDIX - DISALLOWANCE/REDUCTION IN TIME CHARGES OF FRANK, BERNSTEIN IN THE LEONARD JED CO. CHAPTER 11

NAME OF ATTORNEY: HARVEY M. LEBOWITZ

| ITEM NO. | DATE | SERVICES DESCRIBED IN TIME RECORDS | HOURS CLAIMED | AMOUNT CHARGED | AMOUNT ALLOWED | REASON FOR ALLOWANCE, DISALLOWANCE OR REDUCTION |
|---|---|---|---|---|---|---|
| 37 | 01/07/87 | Review & revise obj. to e mpl. of new accountants c. of eng. of subs. acc. firm. | 0.5 | 87.50 | 87.50 | SUBSTANTIVE WORK |
| 38 | 01/16/87 | TEL w/OTHER T-David Musgrave-Disc. of prop. comp. w/Leerdis | 1.0 | 175.00 | 175.00 | ADEQUATE DESCRIPTION - NEGOTIATION |
| 39 | 01/19/87 | TEL w/OTHER T-Bennett Goldstein | 0.4 | 70.00 | 0 | INSUFFICIENT DESCRIPTION |
| 40 | 01/30/87 | ORDER/JUDGMENT Order Appr. stlmt.-Wilke case | 0.2 | 35.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 41 | 02/02/87 | ORDER/JUDGMENT Order Appr. stlmt. of cla im ag. Mike W/CUSIMANO; | 0.2 | 35.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 42 | 02/16/87 | ORDER/JUDGMENT TEL w/CLIENT ORDER APPR. SETLMT. W/CUSIMANO; ORDER APPR. SETLMT. W/KEYSER & T-G. WINSOR (BLANK & UFCKER ); DEV. ACCT. REPTS; T-M. PAUL; C-KGM | 2.0 | 350.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW/LUMPING |
| 43 | 02/16/87 | TEL w/OTHER TEL w/CLIENT T-Larry Coppel;T-Cave Ric e, T-K.Z super;T-T.McCormack; T-B.Phelan | 0.9 | 157.50 | 0 | INSUFFICIENT DESCRIPTION |
| 44 | 02/17/87 | TEL w/CLIENT T-John Fleisher(Wm. Hand Tools) | 0.3 | 52.50 | 0 | INSUFFICIENT DESCRIPTION |
| 45 | 02/17/87 | TEL w/OTHER TEL w/CLIENT T-George Bachrach, T-Perr y Rosens tein (Brighton Best Socket) | 0.4 | 70.00 | 0 | INSUFFICIENT DESCRIPTION |
| 46 | 02/18/87 | TEL w/OTHER T-Larry Coppel | 0.3 | 52.50 | 0 | INSUFFICIENT DESCRIPTION |
| 47 | 02/24/87 | REVIEW FILE Review file | 1.5 | 262.50 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 48 | 02/24/87 | SEARCH/PLAN/PREPARE CREDITORS COMMITTEE Prep. for cred. com . mtg. /com. mtg; T-Dave Musgrave | 4.0 | 700.00 | 700.00 | SUBSTANTIVE WORK |
| 49 | 02/27/87 | STUDY/ANALYZE TEL w/ADVERSARY Review Pr. of Cl. for Adm in. Exp.; T-David Musgrave | 0.7 | 122.50 | 122.50 | ADEQUATE DESCRIPTION |
| 50 | 03/04/87 | CONF-INTRA-OFFICE Reminder; C-JAS | 0.2 | 35.00 | 0 | OFFICE CONFERENCE - DUPLICATIVE |
| 51 | 03/04/87 | REVISE/REDRAFT/AMEND TEL w/ADVERSARY Review papers;T-Dave Al bri ght; T-Dave Musgrave | 0.8 | 140.00 | 0 | INSUFFICIENT DESCRIPTION/LUMPING |
| 52 | 03/05/87 | CONF-INTRA-OFFICE C-JAS;C-JAG | 0.4 | 70.00 | 0 | OFFICE CONFERENCE/DUPLICATIVE |
| 53 | 03/16/87 | NOTICES CORRESP OTHER Not. of Appl. for fees;Ex ec. Soundin g Board;L-fr.JAG to Judge Sch nelder w/d obj. to appt. of N ew Accts.;L-JAG to Musgrave | 1.6 | 280.00 | 0 | LUMPING |
| 54 | 03/31/87 | MEMORANDUM TO PARTNER, ASSOCIATE OR PARALEGAL STUDY/ANALYZE Memo fr. JAG;Notice of M ot. for Auth. to incur Unsec. As Admin. Expense | 0.4 | 70.00 | 0 | LUMPING |
| 55 | 04/01/87 | STUDY/ANALYZE Copy of Daily Report; Int erim Fin. Report to r Jan. | 0.3 | 52.50 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 56 | 04/03/87 | NOTICES CORRESP OTHER Notice of Appl. of Kaufma n, Davis, O aily Reports | 0.4 | 70.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 57 | 04/20/87 | NOTICES CONF-INTRA-OFFICE Notice of hearings;T-Dave Musgrav e; C-JAG | 0.6 | 105.00 | 0 | LUMPING |
| 58 | 04/21/87 | TEL w/OTHER T-David Albrighe (2);Revi ew Obj. to Appl. for All. filed by Hoffm an Davis; et al; revie & revise Obj.fi led by Comm.;C-JAG | 2.9 | 507.50 | 0 | LUMPING |
| 59 | 04/23/87 | TEL w/OTHER T-Dave Albrioht | 0.6 | 105.00 | 0 | INSUFFICIENT DESCRIPTION |
| 60 | 04/28/87 | TEL w/OTHER Attempt to reach Allbrigh t; T-Dave Albright | 0.5 | 87.50 | 0 | INSUFFICIENT DESCRIPTION |
| 61 | 05/04/87 | STUDY/ANALYZE Daily Reports | 0.2 | 35.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 62 | 05/07/87 | CORRESP OTHER COPRESP CLIENT Letter fr. Albright; L-to Comm ittee | 0.5 | 87.50 | 0 | INSUFFICIENT DESCRIPTION |
| 63 | 05/08/87 | TEL w/OTHER T-Dave Musgrave; Claim ag . Liberty Fasteners; postpon. of hearing | 0.7 | 122.50 | 0 | LUMPING |
| 64 | 05/07/87 | TEL w/OTHER CONF-INTRA-OFFICE T-Musgrave; C-JAS (Lee ca se) | 0.6 | 105.00 | 0 | LUMPING |
| 65 | 05/12/87 | STUDY/ANALYZE Daily Reports | 0.4 | 70.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 66 | 05/12/87 | TEL w/CLIENT T-Dwight Stone (Steelcraf t);L-fr. D.Musgrave; | 0.5 | 87.50 | 0 | LUMPING |

## APPENDIX - DISALLOWANCE/REDUCTION IN TIME CHARGES OF FRANK, BERNSTEIN IN THE LEONARD JED CO. CHAPTER 11

| ITEM NO. | DATE | SERVICES DESCRIBED IN TIME RECORDS | HOURS CLAIMED | AMOUNT CHARGED | AMOUNT ALLOWED | REASON FOR ALLOWANCE, DISALLOWANCE OR REDUCTION |
|---|---|---|---|---|---|---|
| 67 | 05/13/87 | Karen Zauner(Pioneer) TEL w/CLIENT T-Tim McCormack(Scovill); review stlmt prop. D iv.Bldg. Systms & Arthur Ugren;T-Coppel(Col eyrcve);P.Rosen stein(Brighton-Best) | 1.5 | 262.50 | 0 | LUMPING |
| 68 | 05/13/87 | TEL w/CLIENT T-G. Windsor(B&D) | 0.2 | 35.00 | 0 | INSUFFICIENT DESCRIPTION |
| 69 | 05/13/87 | TEL w/CLIENT T-G. Review Mot. to Cont. Hear ing in Obj. to acct s. fee | 0.3 | 52.50 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 70 | 05/14/87 | TEL w/OTHER STUDY/ANALYZE T-D. Musgrave re: setlmt. of Ogre n g Dev. Bldg. Systm; cred.comm. meeting on 5/26/87 | 1.0 | 175.00 | 175.00 | ADEQUATE DESCRIPTION |
| 71 | 05/15/87 | TEL w/OTHER T-D. Rice; (Pidge Tool); T-G. Welsh (Von Duprin ) | 0.5 | 87.50 | 0 | INSUFFICIENT DESCRIPTION |
| 72 | 05/15/87 | TEL w/OTHER T-Brian Phelen (Am Weld) , T-D. Albright | 0.5 | 87.50 | 0 | INSUFFICIENT DESCRIPTION |
| 73 | 05/20/87 | TEL w/OTHER T-Herb better (2) re: Ob j. to Reubelmann fee | 0.5 | 87.50 | 0 | INSUFFICIENT DESCRIPTION |
| 74 | 05/21/87 | REVISE/REDRAFT/AMEND CONF MTG w OTHERS Review file; re obj. to appl. of Reubelmann;C-Herb better | 3.0 | 525.00 | 525.00 | ADEQUATE DESCRIPTION - NEGOTIATION |
| 75 | 05/21/87 | TEL w/OTHER T-David Musgrave | 0.4 | 70.00 | 0 | INSUFFICIENT DESCRIPTION |
| 76 | 05/26/87 | REVIEW FILE STUDY/ANALYZE Review file; T-David Mus grave; C -KGM(review int.reb.) | 1.5 | 262.50 | 0 | LUMPING |
| 77 | 05/28/87 | REVIEW FILE CONF-INTRA-OFFICE Review file; C-JAG; revie w D rop. comp (discr. case)James McClure | 0.6 | 105.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 78 | 05/29/87 | CREDITORS COMMITTEE Cred. Comm. mtg. | 4.5 | 787.50 | 787.50 | MEETING W/CLIENT |
| 79 | 06/01/87 | TEL w/OTHER T-Herb better (2) | 0.4 | 70.00 | 0 | INSUFFICIENT DESCRIPTION |
| 80 | 06/02/87 | SEARCH/PLAN/PREPARE COURT HEARING Prep. for hearing;hearing on Obj. to D.S.; C-JAG;T-H. Better | 6.0 | 1,050.00 | 0 | LUMPING |
| 81 | 06/02/87 | TEL w/OTHER T-Duncan Kier (2) | 0.5 | 87.50 | 0 | INSUFFICIENT DESCRIPTION |
| 82 | 06/03/87 | TEL w/ADVERSARY T-Herb better | 0.4 | 70.00 | 0 | INSUFFICIENT DESCRIPTION |
| 83 | 06/08/87 | TEL w/ADVERSARY T-Herb Better | 0.6 | 05.00 | 0 | INSUFFICIENT DESCRIPTION |
| 84 | 06/09/87 | TEL w/OTHER T-David Musgrave | 0.8 | 40.00 | 0 | INSUFFICIENT DESCRIPTION |
| 85 | 06/11/87 | TEL w/OTHER T-Herb Better | 0.5 | 87.50 | 0 | INSUFFICIENT DESCRIPTION |
| 86 | 06/12/87 | CORRESP ADVERSARY L-fr. Musgrave; L-to Muss rave; T-Herb. Be tter | 1.0 | 175.00 | 0 | INSUFFICIENT DESCRIPTION |
| 87 | 06/14/87 | DICTATE/DRAFT/PREPARE L-to David Albright re: f ailure to p ay atty's fees | 2.0 | 350.00 | 100.00 | RATE REDUCED FOR DICTATING LETTER |
| 88 | 06/15/87 | REVISE/REDRAFT/AMEND Revise and review letter to Albright | 0.7 | 122.50 | 0 | RATE REDUCED FOR DICTATING LETTER |
| 89 | 06/16/87 | TEL w/CLIENT T-Perry Rosenstein (Brigh ton Best) | 0.3 | 52.50 | 0 | INSUFFICIENT DESCRIPTION |
| 90 | 06/16/87 | CONF MTG w ADVERSARY Meeting w/Musgrave | 0.5 | 87.50 | 0 | INSUFFICIENT DESCRIPTION |
| 91 | 06/17/87 | CORRESP OTHER L-fr. Musgrave | 0.3 | 52.50 | 0 | INSUFFICIENT DESCRIPTION |
| 92 | 06/18/87 | REVISE/REDRAFT/AMEND begin review of Motion fo r Contempt | 0.4 | 70.00 | 70.00 | SUBSTANTIVE WORK |
| 93 | 06/19/87 | REVISE/REDRAFT/AMEND Review and revise Mot. for Contempt | 0.5 | 87.50 | 87.50 | SUBSTANTIVE WORK |
| 94 | 06/19/87 | REVISE/REDRAFT/AMEND CORRESP ADVERSARY Review and revise Mo t. fo r Cont;C-JAG;L-Musgrave | 1.3 | 227.50 | 0 | LUMPING |
| 95 | 06/22/87 | TEL w/OTHER T-Musgrave; L-fr. Albright;T-D.Phelen; L-D. Phz len | 1.0 | 175.00 | 0 | LUMPING |
| 96 | 06/23/87 | REVISE/REDRAFT/AMEND Review and revise Motion for Contempt | 1.0 | 175.00 | 0 | DID NOT BENEFIT ESTATE |
| 97 | 06/24/87 | TEL w/ADVERSARY STUDY/ANALYZE T-David Mus;rave; Resig. of S covil fr. CC;review Consent Order | 1.2 | 210.00 | 0 | LUMPING |
| 98 | 06/29/87 | CORRESP OTHER L-from Musgrave re: 2nd Amended D.S. & Consen t Order | 0.3 | 52.50 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 99 | 06/30/87 | CORRESP OTHER ltr from Albright to court re trial dates | 0.2 | 35.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |

NAME OF ATTORNEY: HARVEY M. LEBOWITZ

APPENDIX - DISALLOWANCE/REDUCTION IN TIME CHARGES OF FRANK, BERNSTEIN IN THE LEONARD JED CO. CHAPTER 11

NAME OF ATTORNEY: HARVEY M. LEBOWITZ

| ITEM NO. | DATE | SERVICES DESCRIBED IN TIME RECORDS | HOURS CLAIMED | AMOUNT CHARGED | AMOUNT ALLOWED | REASON FOR ALLOWANCE, DISALLOWANCE OR REDUCTION |
|---|---|---|---|---|---|---|
| 100 | 07/02/87 | attempt to contact Herb Retter | 0.2 | 40.00 | 0 | NO BENEFIT TO ESTATE |
| 101 | 07/08/87 | ANSWER memo in opposition to Motion for Contempt; conf w/J. Guzinski | 0.4 | 80.00 | 0 | LUMPING |
| 102 | 07/10/87 | STUDY/ANALYZE Review Consent Order re: disclosure statement | 0.2 | 40.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 103 | 07/13/87 | REVISE/REDRAFT/AMEND Review and revise Mot. for App. of Trustee | 2.6 | 520.00 | 0 | NO BENEFIT TO ESTATE |
| 104 | 07/14/87 | REVISE/REDRAFT/AMEND CONF-INTRA-OFFICE Review and revise Mot. for App. of Trustee; C-JAG | 2.0 | 400.00 | 0 | NO BENEFIT TO ESTATE |
| 105 | 07/15/87 | REVISE/REDRAFT/AMEND Review and revise Mot. for App. of Trustee | 1.9 | 380.00 | 0 | NO BENEFIT TO ESTATE |
| 106 | 07/16/87 | NOTICES REVISE/REDRAFT/AMEND Notice of Stmt. of Liv.; revi ew & revise reply re: contempt | 1.0 | 200.00 | 0 | LUMPING |
| 107 | 07/16/87 | REVISE/REDRAFT/AMEND CONF-INTRA-OFFICE Review and revise Mo t. for Trustee; C-JAG;C-KGM;review Discl. St. & Bal. Sheet; T-D. Musgrave re: Contempt Mot;Stlmt of Lee claim | 2.6 | 520.00 | 0 | LUMPING |
| 108 | 07/20/87 | CORRESP OTHER ltr from Musgrave to court re fees for Execut ive Sounding board | 0.3 | 60.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 109 | 07/20/87 | REVISE/REDRAFT/AMEND review and revise motion for trustee a nd reply to contempt; tel-Duncan Keir | 1.4 | 280.00 | 0 | NO BENEFIT TO ESTATE |
| 110 | 07/21/87 | TEL w/ADVERSARY STUDY/ANALYZE tel-David Musgrave; conf w/J. Guzinski tel-Margaret Snapp; tel-Herb Better; tel-Naomi H opkins; review ltr from Musgrave and notice of settlement r e R.E. Lee and Eretz | 2.0 | 400.00 | 0 | LUMPING |
| 111 | 07/22/87 | NOTICES STUDY/ANALYZE Notice of approval of Disclosure Stat ement and notice of hearing on confirmation; draft letters to creditors; financial reports for April and May. | 1.0 | 200.00 | 0 | LUMPING |
| 112 | 07/22/87 | TEL w/ADVERSARY tel-David Musgrave | 0.5 | 100.00 | 0 | INSUFFICIENT DESCRIPTION |
| 113 | 07/22/87 | CORRESP CLIENT REVISE/REDRAFT/AMEND LTR. TO CREDITORS COMMI TTEE; DRAFT OF LTR TO UNSECURED CREDITORS PE REJECTION CF P LAN; REVIEW AND REVISE MOTION FOR DEFAULT JUDGMENT; CONF w/ J. SHULMAN, K. MCCRUDEN, J. GUZINSKI | 3.0 | 600.00 | 0 | LUMPING |
| 114 | 07/23/87 | TEL w/OTHER Tel-Herb Better | 0.3 | 60.00 | 0 | INSUFFICIENT DESCRIPTION |
| 115 | 07/23/87 | TEL w/OTHER SEARCH/PLAN/PREPARE Daily report; tel w/ Bill H oward (Ridge Tool); Brian Phelan (American Welding) | 2.0 | 400.00 | 0 | INSUFFICIENT DESCRIPTION |
| 116 | 07/23/87 | SEARCH/PLAN/PREPARE Preparation for confirmation hering; T-K m. Lolgrove; Tel-Jonn Keel conf w/ K.McCruden re list of cr editors; conf with J Guzinski re discovery; conf/ with J. S hulman re research. | 2.5 | 500.00 | 0 | DUPLICATIVE CONF/LUMPING |
| 117 | 07/24/87 | TEL w/OTHER office; T-Sandy Harris Phela?'s office; Dwight Stone; T-Melvin Paul(2); T. Walsh's | 3.5 | 700.00 | 0 | INSUFFICIENT DESCRIPTION |
| 118 | 07/24/87 | TEL w/ADVERSARY TEL w/OTHER T-David Musgrave; T-Steve Oerly ; T-Burbank (Walsh) | 1.0 | 200.00 | 0 | INSUFFICIENT DESCRIPTION |
| 119 | 07/27/87 | STUDY/ANALYZE REVISE/REDRAFT/AMEND Review Discovery papers; Review Motions | 1.6 | 320.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 120 | 07/27/87 | TEL w/OTHER REVISE/REDRAFT/AMEND T-Duncan Keir; T-Steve Oer by; T-Bill Howard(2); T-Dave Musgrave; T-Gerald Weish; Rev iew & revise ltrs. to cred; C-KGM; T-Naomi Hopkins T-Jill M inen(2) | 3.5 | 700.00 | 0 | INSUFFICIENT DESCRIPTION |
| 121 | 07/28/87 | SEARCH/PLAN/PREPARE Prep. for conf. w/Judge Schneider; rese | 4.5 | 900.00 | 900.00 | SETTLEMENT NEGOTIATIONS |

APPENDIX

**APPENDIX - DISALLOWANCE/REDUCTION IN TIME CHARGES OF FRANK, BERNSTEIN IN THE LEONARD JED CO. CHAPTER 11**

NAME OF ATTORNEY: HARVEY M. LEBOWITZ

| ITEM NO. | DATE | SERVICES DESCRIBED IN TIME RECORDS | HOURS CLAIMED | AMOUNT CHARGED | AMOUNT ALLOWED | REASON FOR ALLOWANCE, DISALLOWANCE OR REDUCTION |
|---|---|---|---|---|---|---|
| 122 | 07/26/87 | arch? mtg. w/Judge Schneider Tel w/ADVERSARY Tel w/OTHER T-David Albright (2); T-Naomi H opkins; T-D.Kair re: cont.hrg;C-JAG | 1.3 | 267.00 | 0 | INSUFFICIENT DESCRIPTION |
| 123 | 07/30/87 | CURRESP CLIENT TEL w/CLIENT Polling of Comm.;T-D.Albright(3 )Spoke to all members of Comm. | 3.0 | 600.00 | 600.00 | SETTLEMENT IMPLEMENTED |
| 124 | 07/30/87 | SEARCH/PLAN/PREPARE TEL w/OTHER Prep. for hearing; T-Naomi Hopkins; L-fr. Windser | 3.0 | 600.00 | 0 | LUMPING |
| 125 | 07/30/87 | SEARCH/PLAN/PREPARE Prep. for hearing;conv. w/Comm. members & other gen. cred. | 3.0 | 600.00 | 600.00 | SETTLEMENT IMPLEMENTED |
| 126 | 07/31/87 | COURT HEARING SETTLEMENT Hearing on Motion for Contempt; Ch ambers conference | 3.0 | 600.00 | 600.00 | CHAMBERS SETTLEMENT CONFERENCE |
| 127 | 07/31/87 | CORRESP OTHER Daily Report | 0.2 | 40.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 128 | 07/31/87 | SETTLEMENT REVISE/DRAFT/AMEND Neg. re: Cred. Comm. obj;re review & revise papers | 3.0 | 600.00 | 0 | INSUFFICIENT DESCRIPTION |
| 129 | 08/03/87 | TEL w/OTHER T-Helen Impelizzieri (R.E. Dietz Company) | 0.2 | 40.00 | 0 | INSUFFICIENT DESCRIPTION |
| 130 | 08/03/87 | TEL w/OTHER REVIEW FILE T-Naomi Hopkins; Filing | 0.5 | 100.00 | 0 | LUMPING |
| 131 | 08/00/87 | ORDER/JUDGMENT Order Determining Add'l Disclosure Not Requi red | 0.2 | 40.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 132 | 08/10/87 | ORDER/JUDGMENT Order approving settlement of claim | 0.2 | 40.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 133 | 08/11/87 | CONF-INTRA-OFFICE TEL w/OTHER C-JAG;T-David Musgrave | 1.0 | 200.00 | 0 | LUMPING |
| 134 | 08/12/87 | MEMORANDUM TO PARTNER, ASSOCIATE OR PARALEGAL Memo to IEW; C-JAG & JAS | 0.8 | 160.00 | 0 | LUMPING |
| 135 | 08/13/87 | REVISE/REDRAFT/AMEND CONF-INTRA-OFFICE Lines re: w/d of pos tpon.; w/d of Mot. for Cont.;w/d of Mot. for Trustee; w/d o f Obj. to Conf. | 2.0 | 400.00 | 200.00 | NO SKILL REQUIRED |
| 136 | 08/31/87 | CURRESP OTHER STUDY/ANALYZE Letters fr. JAG to Albright, Ko stishak,Grohem;Ritter;Ellin & Tucker | 0.7 | 140.00 | 70.00 | NO SKILL REQUIRED |
| 137 | 08/31/87 | ORDER/JUDGMENT Order Appr. Settlement of R.E. Lee claim | 0.2 | 40.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW/LUMPING |
| 138 | 09/02/87 | STUDY/ANALYZE CONF-INTRA-OFFICE Review Order of Conf; C-JAS | 0.5 | 100.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW/LUMPING |
| 139 | 09/05/87 | STUDY/ANALYZE CONF-INTRA-OFFICE Review memo fr. JAG re: Ble ke | 0.6 | 120.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW/LUMPING |
| 140 | 09/14/87 | CURRESP OTHER L-from JAG to David Musgrave re: receivables aging report | 0.2 | 40.00 | 40.00 | SUPERVISION OF JR. ASSOCIATE |
| 141 | 10/17/87 | STUDY/ANALYZE Review Notice of Settlement-Blake | 0.3 | 60.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 142 | 11/02/87 | NOTICES Motion for Appr. of Settlement of Claims-Blake Cons truction | 0.2 | 40.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 143 | 11/12/87 | CURRESP OTHER Daily Report | 0.2 | 40.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 144 | 11/13/87 | CRCSR/JUDGMENT Order approving settlement-Blake | 0.2 | 40.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 145 | 11/13/87 | TEL w/OTHER T-Herb Getter | 0.6 | 120.00 | 0 | INSUFFICIENT DESCRIPTION |
| 146 | 11/17/87 | STUDY/ANALYZE Review Debtor's Report of Escrow Agent | 0.3 | 60.00 | 0 | INSUFFICIENT DESCRIPTION |
| 147 | 11/24/87 | STUDY/ANALYZE Review revised Appl. for Fees filed by Re.bbl emen & Not. of Depc. | 1.5 | 300.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 148 | 11/25/87 | TEL w/OTHER T-Herb Getter | 0.6 | 120.00 | 0 | INSUFFICIENT DESCRIPTION |
| 149 | 11/25/87 | CORRESP OTHER Daily Reports | 0.2 | 40.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 150 | 12/01/87 | STUDY/ANALYZE Daily Reports | 0.2 | 40.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 151 | 12/01/87 | REVISE/REDRAFT/AMEND w/other. of Obj. to Appl. of Acc.;revise w & revise | 0.6 | 120.00 | 0 | NO SKILL REQUIRED |
| 152 | 12/04/87 | REVISE/REDRAFT/AMEND TEL w/OTHER Review & revise w/o of Obj to Rebbelman fees;T-r.Retter;hot of Geo | 0.9 | 180.00 | 0 | LUMPING/NO SKILL REQUIRED |

APPENDIX – DISALLOWANCE/REDUCTION IN TIME CHARGES OF FRANK, BERNSTEIN IN THE LEONARD JED CO. CHAPTER 11

NAME OF ATTORNEY: HARVEY M. LEBOWITZ

| ITEM NO. | DATE | SERVICES DESCRIBED IN TIME RECORDS | HOURS CLAIMED | AMOUNT CHARGED | AMOUNT ALLOWED | REASON FOR ALLOWANCE, DISALLOWANCE OR REDUCTION |
|---|---|---|---|---|---|---|
| 153 | 12/03/87 | TEL w/OTHER TEL w/ADVERSARY T-Herb Better; T-Dave Musgrave; review w/d of Obj. | 0.9 | 180.00 | 0 | LUMPING |
| 154 | 12/04/87 | STUDY/ANALYZE TEL w/OTHER Review Appl. to Engage Spec. Coun sel; T-David Musgrave | 0.9 | 190.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW/LUMPING |
| 155 | 12/14/87 | STUDY/ANALYZE TEL w/OTHER Review prop. order app. Special C ounsel;T-D.Musgrave;memo to file; --Herb Better | 1.2 | 240.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW/LUMPING |
| 156 | 12/14/87 | TEL w/OTHER T-D. Musgrave;T-D. Musgrave and R. Kremen | 0.7 | 140.00 | 0 | INSUFFICIENT DESCRIPTION |
| 157 | 12/15/87 | STUDY/ANALYZE COURT HEARING Review files & papers for heari ng; app. of spec.counsel;att.hrg. | 2.0 | 400.00 | 200.00 | 1/2 FEE FOR ATTENDING HEARING |
| 158 | 12/17/87 | TEL w/OTHER T-Duncan Keir | 0.4 | 80.00 | 0 | INSUFFICIENT DESCRIPTION |
| 159 | 12/26/87 | ORDER/JUDGMENT Amended Order for App. of Special Counsel | 0.2 | 40.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 160 | 12/31/87 | STUDY/ANALYZE Daily Reports | 0.2 | 40.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 161 | 01/03/88 | ORDER/JUDGMENT Order approving Reubelmann fee | 0.2 | 40.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 162 | 01/06/88 | TEL w/OTHER T-Duncan Keir | 0.5 | 100.00 | 0 | INSUFFICIENT DESCRIPTION |
| 163 | 01/13/88 | STUDY/ANALYZE Review appl. to settle claim of James C. McCl ure (uiscrim.case) | 0.5 | 100.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 164 | 01/13/88 | TEL w/OTHER reach Musgrave | 0.6 | 120.00 | 0 | INSUFFICIENT DESCRIPTION |
| 165 | 01/14/88 | TEL w/ADVERSARY T-David Musgrave | 0.4 | 80.00 | 0 | INSUFFICIENT DESCRIPTION |
| 166 | 01/15/88 | STUDY/ANALYZE Daily reports | 0.2 | 40.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 167 | 01/25/88 | CORRESP OTHER Daily Report | 0.2 | 40.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 168 | 01/26/88 | CORRESP OTHER Daily Reports(2) | 0.2 | 40.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 169 | 01/29/88 | ORDER/JUDGMENT Order approving fee of special counsel | 0.2 | 40.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 170 | 02/10/88 | REVIEW FILE STUDY/ANALYZE Review Trans. of Hearing re: Obj. to fee of Reubelman; Motion for Pa yment | 1.5 | 300.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 171 | 02/29/88 | INVESTIGATION Motion for Expedited nearing-Reubelman, fili ng | 0.4 | 80.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 172 | 03/04/88 | CORRESP OTHER Daily Report; filing | 0.3 | 63.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 173 | 03/13/88 | CORRESP OTHER Daily reports | 0.2 | 42.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 174 | 03/14/88 | STUDY/ANALYZE Daily Reports | 0.2 | 42.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 175 | 03/11/88 | MOTION Review Motion to Compromise Claim | 0.5 | 105.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 176 | 03/11/88 | CORRESP OTHER Daily Reports | 0.2 | 42.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 177 | 04/14/88 | NOTICES MOTION Notice of prop. settlement (Foulger-Pratt); Mot. for Appr. of Slmt. | 0.3 | 63.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 178 | 04/12/89 | ORDER/JUDGMENT Order Appr. Settlement-McClure | 0.2 | 42.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 179 | 05/11/89 | ORDER/JUDGMENT Order Approving Settlement-Foulger-Pratt | 0.2 | 42.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 180 | 05/12/89 | STUDY/ANALYZE Daily reports | 0.2 | 42.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |

TOTAL $30,523.50 $7,504.25

**APPENDIX - DISALLOWANCE/REDUCTION IN TIME CHARGES OF FRANK, BERNSTEIN IN THE LEONARD JED CO. CHAPTER 11**

NAME OF ATTORNEY : JAY A. SHULMAN

| ITEM NO. | DATE | SERVICES DESCRIBED IN TIME RECORDS | HOURS CLAIMED | AMOUNT CHARGED | AMOUNT ALLOWED | REASON FOR ALLOWANCE, DISALLOWANCE OR REDUCTION |
|---|---|---|---|---|---|---|
| 1 | 12/12/86 | CONF .ITG J OTHERS MO-W/HML,L,Jed,J,Albright | 1.5 | 172.50 | 0 | DUPLICATIVE - WHY 2 PARTNERS? |
| 2 | 02/13/87 | STUDY/ANALYZE CONF-INTRA-OFFICE Notes on mtg; w/Albright Pe t Collins re present value prop. pymt | 0.8 | 92.00 | 0 | INSUFFICIENT DESCRIPTION |
| 3 | 02/24/87 | CONF MTG J OTHERS CONF-INTRA-OFFICE Prep. mtg; CONF-INTRA-O FFICE HML/KGM; mtg of Comm; Winsor, HML, KGM | 4.2 | 463.00 | 0 | LUMPING |
| 4 | 02/23/87 | STUDY/ANALYZE Harskell note & purchase | 0.6 | 69.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 5 | 03/04/87 | STUDY/ANALYZE Motion for credit CONF-INTRA-OFFICE HM L, TEL w/OTHER Musgrove w/HML | 0.7 | 80.50 | 0 | LUMPING |
| 6 | 03/05/87 | STUDY/ANALYZE CONF-INTRA-OFFICE Amended disc, stmt, mot, & notice; HML notes disclosure stmt | 1.2 | 138.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 7 | 03/06/87 | STUDY/ANALYZE CONF-INTRA-OFFICE Amended disclosure stmt. He skell corp papers; memo on accts; HML | 1.2 | 138.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 8 | 03/11/87 | STUDY/ANALYZE TEL w/OTHER Disclosure statement; Mus grove, JAG; objections to dis. stmt | 1.1 | 126.50 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 9 | 03/12/87 | REVISE/REDRAFT/AMEND OBJECTION/APPLICATION Objections to di sclosure statement | 0.6 | 69.00 | 0 | INSUFFICIENT DESCRIPTION |
| 10 | 03/13/87 | STUDY/ANALYZE Review objections | 0.3 | 34.50 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 11 | 03/19/87 | STUDY/ANALYZE CONF-INTPA-OFFICE Memo from JAG; CONF-INTRA-O FFICE JAG; HML | 0.2 | 23.00 | 0 | DUPLICATIVE |
| 12 | 03/20/87 | CONF-INTRA-OFFICE JAG; re notice/Covington loan | 0.1 | 11.50 | 0 | INSUFFICIENT DESCRIPTION |
| 13 | 05/07/87 | CONF-INTRA-OFFICE HML | 0.3 | 36.00 | 0 | INSUFFICIENT DESCRIPTION/DUPLICATIVE |
| 14 | 06/0./87 | CONF-INTRA-OFFICE HML re hearing; MNR, Haskell note | 0.5 | 60.00 | 0 | INSUFFICIENT DESCRIPTION/DUPLICATIVE |
| 15 | 07/22/87 | CONF-INTRA-OFFICE HML, JAG; KGM re obj. to plan/trustee mot ion | 0.8 | 108.00 | 0 | NOT BENEFICIAL TO ESTATE |
| 16 | 07/23/87 | CONF-INTRA-OFFICE RESEARCH HML, KGM, JAG; Jed re obj to con firmation | 1.0 | 135.00 | 0 | NOT BENEFICIAL TO ESTATE |
| 17 | 07/24/87 | RESEARCH CONF-INTRA-OFFICE HML, JAG; motion to postpone; sh ortary; request for docs, ballot | 2.6 | 351.00 | 0 | NOT BENEFICIAL TO ESTATE |
| 18 | 07/25/87 | STUDY/ANALYZE REVISE/REDRAFT/AMEND Discovery motions/docs | 4.8 | 648.00 | 0 | NOT BENEFICIAL TO ESTATE |
| 19 | 07/27/87 | CONF-INTRA-OFFICE HML | 0.3 | 40.50 | 0 | INSUFFICIENT DESCRIPTION |
| 20 | 07/28/87 | CONF-INTRA-OFFICE Obj. to ballot/Guzinski; HML | 0.3 | 40.50 | 0 | INSUFFICIENT DESCRIPTION |
| 21 | 07/30/87 | RESEARCH CON-INTRA-OFFICE Discharge of officers; HML, JAG | 1.4 | 189.00 | 0 | INSUFFICIENT DESCRIPTION |
| 22 | 07/31/87 | CONF-INTRA-OFFICE DICTATE/DRAFT/PREPARE HML; revisions to p lan | 1.8 | 243.00 | 0 | DUPLICATIVE - WHY 2 PARTNERS? |
| 23 | 08/11/87 | CONF-INTRA-OFFICE Instru. for confirmation | 0.5 | 67.50 | 0 | INSUFFICIENT DESCRIPTION |
| 24 | 08/1./87 | CONF-INTRA-OFFICE HML re substantive consolidation | 0.6 | 81.00 | 0 | INSUFFICIENT DESCRIPTION |
| 25 | 08/17/87 | CONF-INTRA-OFFICE STUDY/ANALYZE JAG; Reubelman obj. | 0.5 | 67.50 | 0 | INSUFFICIENT DESCRIPTION |
| 26 | 09/20/87 | CONF-INTRA-OFFICE TEL w/OTHER KGM, Guzinski; Better | 1.1 | 148.50 | 0 | INSUFFICIENT DESCRIPTION |
| 27 | 08/21/87 | TEL w/FIRM ATTY CONF-INTRA-OFFICE Prep. for confirm. hearin g/HML,KGM re tally/ STUDY/ANALYZE draft tally | 3.0 | 405.00 | 405.00 | WORK NECESSARY FOR CONFIRMATION |
| 28 | 08/24/87 | DICTATE/DRAFT/PREPARE CONFIRMATION prep. for confirm. heari ng; attend; Albright/Musgrove/HML | 5.8 | 783.00 | 783.00 | WORK NECESSARY FOR CONFIRMATION |
| 29 | 08/25/87 | TEL w/FIRM ATTY HML | 0.2 | 27.00 | 0 | DUPLICATIVE |
| 30 | 12/04/87 | TEL w/OTH-S re gen re Ruebelman | 0.1 | 13.50 | 0 | INSUFFICIENT DESCRIPTION |
| | | | 39.1 | TOTAL $4,881.00 | $1,188.00 | |

**APPENDIX - DISALLOWANCE/REDUCTION IN TIME CHARGES OF FRANK, BERNSTEIN IN THE LEONARD JED CO. CHAPTER 11**

NAME OF ATTORNEY: JOSEPH A. GUZINSKI

| ITEM NO. | DATE | SERVICES DESCRIBED IN TIME RECORDS | HOURS CLAIMED | AMOUNT CHARGED | AMOUNT ALLOWED | REASON FOR ALLOWANCE, DISALLOWANCE OR REDUCTION |
|---|---|---|---|---|---|---|
| 1 | 01/05/87 | CONF-INTRA-OFFICE STUDY/ANALYZE HML re: objection to acct. appl'n; monthly reports; dictate/draft | 2.0 | 170.00 | 0 | LUMPING |
| 2 | 01/05/87 | RESEARCH re: appointment of professionals | 0.5 | 42.50 | 0 | INSUFFICIENT DESCRIPTION |
| 3 | 01/07/87 | REVISE/REDRAFT/AMEND objection | 0.1 | 8.50 | 0 | INSUFFICIENT DESCRIPTION |
| 4 | 01/07/87 | RESEARCH re: DOT certification | 0.1 | 8.50 | 0 | INSUFFICIENT DESCRIPTION |
| 5 | 01/07/87 | DICTATE/DRAFT/PREPARE to Court re: objection to accountant's application | 0.1 | 8.50 | 8.50 | DE MINIMUS |
| 6 | 01/07/87 | REVISE/REDRAFT/AMEND | 0.3 | 25.50 | 0 | INSUFFICIENT DESCRIPTION |
| 7 | 01/12/87 | DICTATE/DRAFT/PREPARE Motion for Reconsideration | 2.8 | 238.00 | 238.00 | REASONABLE FOR SUBSTANTIVE WORK |
| 8 | 01/12/87 | DICTATE/DRAFT/PREPARE Motion for Reconsideration | 0.6 | 51.00 | 51.00 | REASONABLE FOR SUBSTANTIVE WORK |
| 9 | 01/12/87 | DICTATE/DRAFT/PREPARE letter to court re acct's application | 0.4 | 34.00 | 34.00 | REASONABLE FOR SUBSTANTIVE WORK |
| 10 | 01/12/87 | REVISE/REDRAFT/AMEND Motion for Reconsideration | 0.2 | 17.00 | 17.00 | REASONABLE FOR SUBSTANTIVE WORK |
| 11 | 01/12/87 | REVISE/REDRAFT/AMEND letter to court re: acct's application | 0.3 | 25.50 | 25.50 | REASONABLE FOR SUBSTANTIVE WORK |
| 12 | 01/12/87 | REVISE/REDRAFT/AMEND motion for reconsideration | 0.3 | 25.50 | 25.50 | REASONABLE FOR SUBSTANTIVE WORK |
| 13 | 01/13/87 | REVISE/REDRAFT/AMEND motion for reconsideration | 0.1 | 8.50 | 8.50 | DE MINIMUS |
| 14 | 01/13/87 | REVISE/REDRAFT/AMEND motion for reconsideration | 0.2 | 17.00 | 17.00 | REASONABLE FOR SUBSTANTIVE WORK |
| 15 | 01/14/87 | OBJECTION/APPLICATION to application for accountants | 0.1 | 8.50 | 8.50 | DE MINIMUS |
| 16 | 01/14/87 | DICTATE/DRAFT/PREPARE memorandum re: telephone call w/Mr. Jordan | 0.2 | 17.00 | 17.00 | SCHEDULING MATTERS |
| 17 | 01/15/87 | CONF-INTRA-OFFICE | 0.1 | 8.50 | 0 | INSUFFICIENT DESCRIPTION |
| 18 | 02/17/87 | DICTATE/DRAFT/PREPARE memo to HML re: objection | 0.3 | 25.50 | 25.50 | REQUIRED FOR SUPERVISION OF JR. ASSOCIATE |
| 19 | 02/19/87 | DICTATE/DRAFT/PREPARE memorandum re: accountant's application | 0.3 | 25.50 | 25.50 | REQUIRED FOR SUPERVISION OF JR. ASSOCIATE |
| 20 | 03/09/87 | TEL w/ADVERSARY re: compensation of consultant | 0.1 | 8.50 | 8.50 | DE MINIMUS |
| 21 | 03/10/87 | STUDY/ANALYZE TEL w/ADVERSARY Memo in Opp. to Motion for rReconsideration; new accts.; stipulation letter to court re: stipulation | 1.6 | 153.00 | 153.00 | WORK RELATING TO RECON |
| 22 | 03/11/87 | CONF-INTRA-OFFICE JAS re: Covington loan | 0.1 | 8.50 | 8.50 | DE MINIMUS |
| 23 | 03/12/87 | DICTATE/DRAFT/PREPARE REVISE/REDRAFT/AMEND objection to disclosure state. | 0.9 | 76.50 | 76.50 | SUBSTANTIVE WORK |
| 24 | 03/16/87 | TEL w/ADVERSARY re: Covington loan | 0.2 | 17.00 | 0 | INSUFFICIENT DESCRIPTION |
| 25 | 03/17/87 | STUDY/ANALYZE Accountant's Appl. for Compensation | 0.4 | 34.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 26 | 03/24/87 | TEL w/ADVERSARY re: Puebelman fee petition | 0.1 | 8.50 | 8.50 | ADEQUATE DESCRIPTION |
| 27 | 04/16/87 | STUDY/ANALYZE application for accountant's compensation | 0.5 | 47.50 | 47.50 | NECESSARY FOR PREPARATION OF OBJECTION |
| 28 | 04/20/87 | STUDY/ANALYZE RESEARCH accountant's fee petition; standard for comp. DICTATE/DRAFT/PREPARE obj. to fee petition; con for comp. | 5.8 | 551.00 | 551.00 | NECESSARY FOR PREPARATION OF OBJECTION |
| 29 | 04/21/87 | DICTATE/DRAFT/PREPARE REVISE/REDRAFT/AMEND objection to acc d. of accts. | 4.3 | 408.50 | 408.50 | NECESSARY FOR PREPARATION OF OBJECTION |
| 30 | 05/04/87 | CONF-INTRA-OFFICE HML and Dave Musgrave re: Ruebelmann fee ts. comp.; motion | 0.3 | 28.50 | 28.50 | NO DUPLICATION |
| 31 | 05/26/87 | STUDY/ANALYZE CONF MTg w/CLIENT Second Disclosure State.; cred. comm. | 4.2 | 399.00 | 0 | DUPLICATIVE - SEE LEBOWITZ NO. 78 |
| 32 | 06/01/87 | STUDY/ANALYZE prepare for hrg.; disc. s tate. | 2.3 | 216.50 | 216.50 | NECESSARY FOR HEARING |
| 33 | 06/02/87 | STUDY/ANALYZE financial statements for hearing; prep. & attend hrg. | 3.4 | 323.00 | 323.00 | NECESSARY FOR HEARING |

## APPENDIX - DISALLOWANCE/REDUCTION IN TIME CHARGES OF FRANK, BERNSTEIN IN THE LEONARD JED CO. CHAPTER 11

NAME OF ATTORNEY: JOSEPH A. GUZINSKI

| ITEM NO. | DATE | SERVICES DESCRIBED IN TIME RECORDS | HOURS CLAIMED | AMOUNT CHARGED | AMOUNT ALLOWED | REASON FOR ALLOWANCE, DISALLOWANCE OR REDUCTION |
|---|---|---|---|---|---|---|
| 34 | 06/02/87 | CONF-INTRA-OFFICE re: motion to appoint trustee | 1.0 | 95.00 | 0 | DID NOT BENEFIT ESTATE |
| 35 | 06/05/87 | RESEARCH re: appt. of trustee | 3.5 | 332.50 | 0 | DID NOT BENEFIT ESTATE |
| 36 | 06/12/87 | RESEARCH re: appt. of trustee | 0.5 | 47.50 | 0 | DID NOT BENEFIT ESTATE |
| 37 | 06/14/87 | DICTATE/DRAFT/PREPARE motion for trustee | 1.0 | 95.00 | 0 | DID NOT BENEFIT ESTATE |
| 38 | 06/15/87 | DICTATE/DRAFT/PREPARE Motion for Trustee | 0.5 | 47.50 | 0 | DID NOT BENEFIT ESTATE |
| 39 | 06/15/87 | DICTATE/DRAFT/PREPARE motion for trustee; Motion for Conte mpt | 1.2 | 114.00 | 0 | DID NOT BENEFIT ESTATE |
| 40 | 06/16/87 | DICTATE/DRAFT/PREPARE CONF-INTRA-OFFICE Motion for Trustee; re: Motion for Contempt (HML) | 1.1 | 104.50 | 0 | DID NOT BENEFIT ESTATE |
| 41 | 06/17/87 | DICTATE/DRAFT/PREPARE ARTICLES OF AMENDMENT motion for cont empt; 6/29 hrs (Mr. Musgrave) | 2.1 | 199.50 | 0 | DID NOT BENEFIT ESTATE |
| 42 | 06/18/87 | REVISE/REDRAFT/AMEND motion for contempt; letter to Musgrave re: discl. state. | 0.6 | 57.00 | 0 | LUMPING |
| 43 | 06/19/87 | CONF-INTRA-OFFICE REVISE/REDRAFT/AMEND w/HML re Motion for Contempt letter to Musgrave | 1.5 | 142.50 | 0 | LUMPING |
| 44 | 06/22/87 | DICTATE/DRAFT/PREPARE REVISE/REDRAFT/AMEND Motion for Conte mpt | 2.8 | 266.00 | 0 | LUMPING |
| 45 | 06/23/87 | REVISE/REDRAFT/AMEND motion for contempt; | 4.1 | 389.50 | 0 | LUMPING |
| 46 | 06/24/87 | DICTATE/DRAFT/PREPARE CONF-INTRA-OFFICE Motion for Trustee; financial; Revise/Redraft/Amend motion for trustee | 3.9 | 370.50 | 0 | LUMPING/NOT BENEFICIAL TO ESTATE |
| 47 | 06/27/87 | RESEARCH re: appt. of trustee | 2.5 | 237.50 | 0 | DID NOT BENEFIT ESTATE |
| 48 | 06/28/87 | RESEARCH REVISE/REDRAFT/AMEND re: appointment of trustee; | 2.0 | 190.00 | 0 | DID NOT BENEFIT ESTATE |
| 49 | 06/29/87 | RESEARCH DICTATE/DRAFT/PREPARE appt. of Ch. 11 trustee; mem o in support of appt. of trustee | 4.0 | 330.00 | 0 | DID NOT BENEFIT ESTATE |
| 50 | 07/06/87 | DICTATE/DRAFT/PREPARE motion for protective order | 1.0 | 180.00 | 0 | DID NOT BENEFIT ESTATE |
| 51 | 07/07/87 | DICTATE/DRAFT/PREPARE REVISE/REDRAFT/AMEND letter to Herb B etter; motion for trustee | 5.7 | 541.50 | 0 | LUMPING |
| 52 | 07/06/87 | STUDY/ANALYZE response to motion for contempt | 0.2 | 19.00 | 0 | DID NOT BENEFIT ESTATE |
| 53 | 07/13/87 | REVISE/REDRAFT/AMEND motion for trustee | 5.0 | 475.00 | 0 | DID NOT BENEFIT ESTATE |
| 54 | 07/14/87 | DICTATE/DRAFT/PREPARE REVISE/REDRAFT/AMEND Motion for Trust ee | 5.5 | 522.50 | 0 | DID NOT BENEFIT ESTATE |
| 55 | 07/15/87 | REVISE/REDRAFT/AMEND Motion for Contempt; Motion for Truste e; | 4.0 | 380.00 | 0 | DID NOT BENEFIT ESTATE |
| 56 | 07/16/87 | REVISE/REDRAFT/AMEND DICTATE/DRAFT/PREPARE Motion for Trust ee; reply memo for contempt motion | 2.6 | 247.00 | 0 | DID NOT BENEFIT ESTATE |
| 57 | 07/20/87 | REVISE/REDRAFT/AMEND reply memorandum motion for trustee | 1.0 | 95.00 | 0 | DID NOT BENEFIT ESTATE |
| 58 | 07/21/87 | DICTATE/DRAFT/PREPARE RESEARCH motion for default; affidavi ts; CONF-INTRA-OFFICE | 4.5 | 427.50 | 0 | LUMPING/NOT BENEFICIAL |
| 59 | 07/22/87 | REVISE/REDRAFT/AMEND TEL w/OTHER Motion for Default; re: co nf. hrg. (Earl Jordan); letter to Cred. Comm. re: plan; pre p. for hrg. on cont. (HML, KCH, JAS) CONF-INTRA-OFFICE | 4.3 | 408.50 | 0 | LUMPING |
| 60 | 07/23/87 | REVISE/REDRAFT/AMEND RESEARCH Motion for Contempt; service of subpoena; DICTATE/DRAFT/PREPARE discovery pleadings and objection to plan; CONF-INTRA-OFFICE discovery for motion f or trustee; letter to creditors; polling of Committee on pl an | 8.8 | 836.00 | 0 | LUMPING |
| 61 | 07/24/87 | DICTATE/DRAFT/PREPARE motion for postponement; motion to re duce time and numerous discovery pleadings | 0.5 | 902.50 | 0 | LUMPING/NOT BENEFICIAL |

## APPENDIX - DISALLOWANCE/REDUCTION IN TIME CHARGES OF FRANK, BERNSTEIN IN THE LEONARD JED CO. CHAPTER 11

NAME OF ATTORNEY: JOSEPH A. GUZINSKI

| ITEM NO. | DATE | SERVICES DESCRIBED IN TIME RECORDS | HOURS CLAIMED | AMOUNT CHARGED | AMOUNT ALLOWED | REASON FOR ALLOWANCE, DISALLOWANCE OR REDUCTION |
|---|---|---|---|---|---|---|
| 62 | 07/25/87 | DICTATE/DRAFT/PREPARE discovery pleadings | 11.0 | 1,045.00 | 0 | DID NOT BENEFIT ESTATE |
| 63 | 07/27/87 | REVISE/REDRAFT/AMEND letter re: plan to creditors; prepare for scheduling conf. | 4.5 | 427.50 | 427.00 | SUBSTANTIVE WORK |
| 64 | 07/28/87 | REVISE/REDRAFT/AMEND re: ballot requirements; attend scheduling conf. w/J. Schneider | 3.3 | 313.50 | 313.50 | SETTLEMENT EFFORTS |
| 65 | 07/29/87 | DICTATE/DRAFT/PREPARE REVISE/REDRAFT/AMEND response to demand letter; corporate law issues in motion for contempt; RESEARCH contempt issue | 9.1 | 864.50 | 0 | LUMPING/NOT BENEFICIAL |
| 66 | 07/31/87 | RESEARCH CONF MTG w ADVERSARY re: contempt issues; before hearing re: settlement; re: procedure for modifying plan of reorganization | 3.1 | 294.50 | 0 | LUMPING/NOT BENEFICIAL |
| 67 | 08/11/87 | TEL w/ADVERSARY re: conf. hearing (Musgrave); prepare file for confirmation hrg. | 0.6 | 57.00 | 57.00 | PRECONFIRMATION PREPARATION |
| 68 | 08/12/87 | DICTATE/DRAFT/PREPARE pleadings per settlement agree. letter (discovery) | 2.0 | 190.00 | 190.00 | SETTLEMENT IMPLEMENTED |
| 69 | 08/14/87 | REVISE/REDRAFT/AMEND DICTATE/DRAFT/PREPARE pleadings re: settle, agree., letters re: discovery | 1.5 | 142.50 | 142.50 | SETTLEMENT IMPLEMENTED |
| 70 | 08/15/87 | REVISE/REDRAFT/AMEND discovery letters | 0.5 | 47.50 | 47.50 | SETTLEMENT IMPLEMENTED |
| 71 | 08/17/87 | CONF-INTRA-OFFICE STUDY/ANALYZE RE: RUEBELMANN CBJ. TO CONFIRMATION (JAS); PROPOSED SETTLEMENT W/BAKER CONSTR., COMPANY | 0.7 | 66.50 | 0 | LUMPING |
| 72 | 08/20/87 | CONF-INTRA-OFFICE TEL w/ADVERSARY re: Duebelmann objection and confirmation of plan; tally of ballots on plan; TEL w/O THER objection by Ruebelman to confirmation (letter) | 1.6 | 152.00 | 0 | LUMPING |
| 73 | 08/21/87 | Prepare for confirmation hearing | 1.0 | 95.00 | 95.00 | PRECONFIRMATION PREPARATION |
| 74 | 08/24/87 | attend hearing | 2.0 | 190.00 | 190.00 | BENEFICIAL TO ESTATE |
| 75 | 08/12/87 | DICTATE/DRAFT/PREPARE pleadings for confirmation hearing | 0.7 | 66.50 | 66.50 | SETTLEMENT IMPLEMENTED |
| 76 | 08/24/87 | prepare for hearing | 1.5 | 142.50 | 142.50 | BENEFICIAL TO ESTATE |
| 77 | 08/29/87 | DICTATE/DRAFT/PREPARE Memo upgrading Bluhm settlement | 0.4 | 38.00 | 0 | INSUFFICIENT DESCRIPTION |
| 78 | 09/05/87 | CONF-INTRA-OFFICE re: Blake settlement proposal | 0.3 | 28.50 | 0 | INSUFFICIENT DESCRIPTION |
| 79 | 09/05/87 | STUDY/ANALYZE TEL w/ADVERSARY A/K report of 4/2/87; Blake s | 0.4 | 38.00 | 0 | INSUFFICIENT DESCRIPTION |
| 80 | 09/11/87 | DICTATE/DRAFT/PREPARE letter re: Blake settlement and accounts receivable | 0.3 | 28.50 | 0 | INSUFFICIENT DESCRIPTION |
| 81 | 09/21/87 | TEL w/ADVERSARY re: accts. receivable report (Musgrave) | 0.2 | 19.00 | 19.00 | ADEQUATE DESCRIPTION |
| 82 | 10/05/87 | TEL w/ADVERSARY cred. comm. fees | 0.2 | 19.00 | 19.00 | ADEQUATE DESCRIPTION |
| 83 | 09/07/88 | DICTATE/DRAFT/PREPARE Appl. for final allowance of fees | 3.0 | 315.00 | 157.50 | PREPARATION OF FEE PETITION AT LOWER RATE |

TOTAL $15,731.00   $4,175.00

APPENDIX - DISALLOWANCE/REDUCTION IN TIME CHARGES OF FRANK, BERNSTEIN IN THE LEONARD JED CO. CHAPTER 11

| ITEM NO. | DATE | SERVICES DESCRIBED IN TIME RECORDS | HOURS CLAIMED | AMOUNT CHARGED | AMOUNT ALLOWED | REASON FOR ALLOWANCE, DISALLOWANCE OR REDUCTION |
|---|---|---|---|---|---|---|
| 1 | 07/01/86 | STUDY/ANALYZE CONF-INTRA-OFFICE corres. from DM re Arrow Lc cn, HML | 0.2 | 20.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 2 | 07/10/86 | TEL w/OTHER CONF-INTRA-OFFICE D. Musgrave, HML re Arrow Loc k settlement | 0.3 | 30.00 | 0 | INSUFFICIENT DESCRIPTION |
| 3 | 07/16/86 | TEL w/OTHER DSM re arenged plan, disc. st, conf, HML | 0.2 | 20.00 | 20.00 | ADEQUATE DESC. OF COMM. W/ D COUNSEL |
| 4 | 07/17/86 | CONF MTG w/ADVERSARY CONF-INTRA-OFFICE DSM re amended plan, | 2.0 | 200.00 | 200.00 | ADEQUATE DESC. OF COMM. W/ D COUNSEL |
| 5 | 07/21/86 | dis, cl, IT, HML STUDY/ANALYZE printout re; fee app | 0.? | 20.00 | 20.00 | PREPARE FEE APPLICATION |
| 6 | 07/22/86 | STUDY/ANALYZE printout for fee app | 0.4 | 40.00 | 40.00 | PREPARE FEE APPLICATION |
| 7 | 07/23/86 | CONF-INTRA-OFFICE Keyser, amended plan | 0.3 | 30.00 | 30.00 | HML PARTICIPATION IN SAME CONF. NOT COMP. |
| 8 | 07/24/86 | STUDY/ANALYZE CONF-INTRA-OFFICE HML re amended disclosur e statement | 0.6 | 60.00 | 60.00 | HML PARTICIPATION IN SAME CONF. NOT COMP. |
| 9 | 07/25/86 | CONF-INTRA-OFFICE TEL w/OTHER HML, D. Musgrave | 3.0 | 300.00 | 0 | DUPLICATIVE |
| 10 | 07/25/86 | REVIEW FILE DICTATE/DRAFT/PREPARE Application for Interim A llowance | 2.2 | 220.00 | 220.00 | PREPARE FEE APPLICATION |
| 11 | 07/26/86 | TEL w/OTHER STUDY/ANALYZE DSM re amended discl. st atement | 0.7 | 70.00 | 70.00 | ADEQUATE DESCRIPTION |
| 12 | 07/28/86 | TEL w/OTHER projections | 0.1 | 10.00 | 0 | INSUFFICIENT DESCRIPTION |
| 13 | 07/29/86 | TEL w/OTHER REVIEW FILE DSM reamended discl. stat ement, fe e app'n | 0.2 | 20.00 | 20.00 | ADEQUATE DESCRIPTION |
| 14 | 07/29/86 | PROOFREAD REVISE/REDRAFT/AMEND Amended FBC&G fee app'n, con f, HML | 1.1 | 110.00 | 55.00 | PROOFREADING |
| 15 | 07/30/86 | TEL w/OTHER REVIEW FILE DSM reommended discl. s tatement, f ee app'n | 0.2 | 20.00 | 20.00 | ADEQUATE DESCRIPTION |
| 16 | 07/30/86 | PROOFREAD REVISE/REDRAFT/AMEND Amended FBC&G fee app'n, c on f, HML | 1.1 | 110.00 | 55.00 | PROOFREADING |
| 17 | 07/31/86 | STUDY/ANALYZE Amended Plan, Disc. State | 0.3 | 30.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 18 | 07/31/86 | CONF-INTRA-OFFICE REVISE/REDRAFT/AMEND App'n for Attys Fees | 0.4 | 40.00 | 40.00 | PREPARE FEE APPLICATION |
| 19 | 08/04/86 | STUDY/ANALYZE projections | 0.2 | 20.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 20 | 08/06/86 | REVISE/REDRAFT/AMEND STUDY/ANALYZE fee app'n, drs. fee app. , amended disc. st. | 1.1 | 110.00 | 0 | LUMPING |
| 21 | 08/09/86 | PROOFREAD REVISE/REDRAFT/AMEND Amend FBC&G Fee App'n, re v1 ew drs. fee app. | 0.7 | 70.00 | 0 | LUMPING |
| 22 | 08/09/86 | STUDY/ANALYZE Drs. amended plan, discl. st. | 0.5 | 50.00 | 0 | NON PRODUCTIVE DOCUMENT REVIEW |
| 23 | 08/11/86 | TEL w/OTHER CONF-INTRA-OFFICE DSM, HML re disclosure st at. | 0.5 | 50.00 | 50.00 | ADEQUATE DESCRIPTION |
| 24 | 08/14/86 | CONF-INTRA-OFFICE , plan, fee apps | 0.2 | 20.00 | 0 | INSUFFICIENT DESCRIPTION |
| 25 | 08/15/86 | CONF-INTRA-OFFICE PROOFREAD FBC&G fee app, conf, HML re dis c&s st, DSM | 1.2 | 120.00 | 0 | INSUFFICIENT DESCRIPTION/LUMPING |
| 26 | 08/19/86 | TEL w/OTHER REVIEW FILE DSM re Amendments to dis closure st , proc, re fee apps | 0.5 | 50.00 | 50.00 | ADEQUATE DESCRIPTION |
| 27 | 08/19/86 | DICTATE/DRAFT/PREPARE CORRESP OTHER withdrawal of Cbl'n, co rr es, Lt. | 0.3 | 30.00 | 30.00 | ADEQUATE DESCRIPTION |

NAME OF ATTORNEY: PAULA KRAHN MERKLE

## APPENDIX - DISALLOWANCE/REDUCTION IN TIME CHARGES OF FRANK, BERNSTEIN IN THE LEONARD JED CO. CHAPTER 11

| ITEM NO. | DATE | SERVICES DESCRIBED IN TIME RECORDS | HOURS CLAIMED | AMOUNT CHARGED | AMOUNT ALLOWED | REASON FOR ALLOWANCE, DISALLOWANCE OR REDUCTION |
|---|---|---|---|---|---|---|
| 28 | 08/20/86 | PROOFREAD TEL w/OTHER corres., withdrawal fee a pp., OSM | 0.2 | 20.00 | 0 | INSUFFICIENT DESCRIPTION |
| 29 | 08/21/86 | CONF-INTRA-OFFICE | 0.2 | 20.00 | 0 | INSUFFICIENT DESCRIPTION |
| 30 | 08/22/86 | CONF-INTRA-OFFICE CORRESP OTHER HML re amended plan, OSM re mailing of notices | 0.3 | 30.00 | 0 | INSUFFICIENT DESCRIPTION/LUMPING |
| 31 | 08/22/86 | CONF-INTRA-OFFICE CICTATE/DRAFT/PREPARE Withdrawal of Wilke objection | 0.2 | 20.00 | 20.00 | SUBSTANTIVE WORK/BENEFICIAL TO ESTATE |
| 32 | 08/25/86 | PROOFREAD CORRESP OTHER Wilke-withdrawal of objection, con f, HML | 0.2 | 20.00 | 20.00 | SUBSTANTIVE WORK/BENEFICIAL TO ESTATE |
| 33 | 08/25/86 | TEL w/OTHER Earl Jordan re Wilker hrg ., 8/28 on fees | 0.2 | 20.00 | 20.00 | SCHEDULING HEARING |
| 34 | 08/25/86 | TEL w/OTHER CONF-INTRA-OFFICE Dave Musgrave, HML re fee app s, accts. fees | 0.4 | 40.00 | 40.00 | NEGOTIATIONS |
| 35 | 09/07/86 | STUDY/ANALYZE corres. from Dempsey re s status of case/claim nces by Jed. fees, H ML | 0.2 | 20.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 36 | 09/10/86 | STUDY/ANALYZE daily reports | 0.2 | 20.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 37 | 09/10/86 | STUDY/ANALYZE CORRESP OTHER Federline (creditor) inquiry | 0.2 | 20.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 38 | 09/10/86 | CONF-INTRA-OFFICE MEMORANDUM TO PARTNER, ASSOCIATE OR PARAL cr. inquiry conf. re status, July fin. report | 0.3 | 30.00 | 0 | INSUFFICIENT DESCRIPTION |
| 39 | 09/17/86 | CONF-INTRA-OFFICE HML re int. fin. reports | 0.2 | 20.00 | 0 | INSUFFICIENT DESCRIPTION |
| 40 | 10/02/86 | RESEARCH MEMORANDUM TO PARTNER, ASSOCIATE OR PARALEGAL adve nces by Jed. $30.4, H ML | 2.1 | 210.00 | 210.00 | ADEQUATE DESCRIPTION |
| 41 | 10/03/86 | CONF-INTRA-OFFICE CORRESP OTHER HML re memo on Jed admin. c laim, corres. to OSM | 0.4 | 40.00 | 0 | LUMPING |
| 42 | 10/07/86 | CONF-INTRA-OFFICE HML re 364 issue | 0.1 | 10.00 | 20.00 | REASONABLE FOR SERVICE |
| 43 | 10/30/86 | Customono settlement | 0.1 | 10.00 | 0 | INSUFFICIENT DESCRIPTION |
| 44 | 11/12/86 | STUDY/ANALYZE CONF-INTRA-OFFICE plen and disclosure state m ent, HML | 1.1 | 110.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 45 | 11/14/86 | TEL w/OTHER CONF-INTRA-OFFICE OSM, HML re plan, disc. s t. proposed settlement | 1.1 | 110.00 | 110.00 | SEE LEBOWITZ NO. 24 |
| 46 | 11/14/86 | REVIEW FILE CORRESP OTHER OSM, creditors' comm., c onf. HML | 0.8 | 80.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 47 | 11/19/86 | MEMORANDUM TO PARTNER, ASSOCIATE OR PARALEGAL | 0.1 | 10.00 | 0 | INSUFFICIENT DESCRIPTION |
| 48 | 11/24/86 | TEL w/OTHER CONF-INTRA-OFFICE Perry Ruberstein-creditor - r e disc. st. | 0.4 | 40.00 | 0 | INSUFFICIENT DESCRIPTION |
| 49 | 12/02/86 | CONF-INTRA-OFFICE | 0.1 | 10.00 | 0 | INSUFFICIENT DESCRIPTION |
| 50 | 12/03/86 | TEL w/OTHER CONF-INTRA-OFFICE D. Musgrave, HML re appl. for plan | 0.2 | 20.00 | 0 | INSUFFICIENT DESCRIPTION |
| 51 | 12/04/86 | CORRESP OTHER TEL w/OTHER Perry Rosenstein, OSM re disc. st .. review file | 0.4 | 40.00 | 0 | LUMPING |
| 52 | 03/30/88 | TEL w/OTHER creditor | 0.1 | 11.00 | 0 | INSUFFICIENT DESCRIPTION |
| 53 | 03/31/88 | TEL w/OTHER Musgrave, Mayer (creditor), re status | 0.3 | 33.00 | 0 | INSUFFICIENT DESCRIPTION |
| 54 | 04/06/88 | CONF-INTRA-OFFICE Oak, Folger, McClure settle ments, tel w/OSM conf. HML | 0.6 | 66.00 | 0 | LUMPING |

NAME OF ATTORNEY: PAULA KRAHN MERKLE

## APPENDIX - DISALLOWANCE/REDUCTION IN TIME CHARGES OF FRANK, BERNSTEIN IN THE LEONARD JED CO. CHAPTER 11

| ITEM NO. | DATE | SERVICES DESCRIBED IN TIME RECORDS | HOURS CLAIMED | AMOUNT CHARGED | AMOUNT ALLOWED | REASON FOR ALLOWANCE, DISALLOWANCE OR REDUCTION |
|---|---|---|---|---|---|---|
| 55 | 04/07/89 | STUDY/ANALYZE daily reports, Oak settlement | 0.3 | 33.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 56 | 04/06/89 | TEL w/OTHER creditor re status - paymetns (Furst & Furst) | 0.2 | 22.00 | 0 | INSUFFICIENT DESCRIPTION |
| 57 | 04/11/89 | STUDY/ANALYZE corres.-Omark (cr) | 0.1 | 11.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 58 | 04/11/89 | STUDY/ANALYZE daily reports (3/14/-29/89) | 0.1 | 11.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 59 | 04/15/89 | TEL w/OTHER REVIEW FILE OSM re: status of payments, Oak | 0.3 | 33.00 | 0 | INSUFFICIENT DESCRIPTION |
| 60 | 04/11/89 | TEL w/OTHER creditors re: 2/25 dist'n, D. Musgrave re Oak | 0.2 | 22.00 | 0 | INSUFFICIENT DESCRIPTION |
| 61 | 06/27/89 | STUDY/ANALYZE Daily reports | 0.2 | 22.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 62 | 07/05/89 | RLVIEW FILE CONF-INTRA-OFFICE JAG, app'n for fees, status o f case, tal w/OSM re monte verde obj. | 0.9 | 99.00 | 0 | LUMPING |
| 63 | 07/06/89 | TEL w/OTHER REVIEW FILE Furst & Furst re distribution | 0.3 | 33.00 | 0 | LUMPING |
| 64 | 07/12/89 | REVIEW FILE TEL w/OTHER unsecured crs.-no distribution | 0.2 | 22.00 | 0 | LUMPING |
| 65 | 07/13/89 | TEL w/OTHER REVIEW FILE Furst & Furst | 0.2 | 22.00 | 0 | LUMPING |
| 66 | 07/13/89 | TEL w/CLIENT TEL w/OTHER OSM re missing cks, Furst & Furst | 0.2 | 22.00 | 0 | LUMPING |
| 67 | 07/23/89 | CONF-INTRA-OFFICE KML re attys fee app. | 0.1 | 11.00 | 11.00 | PREPARATION OF FEE APPLICATION |
| 68 | 07/29/89 | TEL w/OTHER Brian Marks - Furst & Furst | 0.1 | 11.00 | 0 | INSUFFICIENT DESCRIPTION |
| 69 | 08/04/89 | TEL w/OTHER creditor | 0.2 | 22.00 | 0 | INSUFFICIENT DESCRIPTION |
| 70 | 08/16/89 | REVIEW FILE TEL w/OTHER review plan, tel w/ D. Musgrave, San dy Coons, Comark, Inc., corres. OSM | 0.5 | 55.00 | 0 | INSUFFICIENT DESCRIPTION/LUMPING |
| 71 | 09/24/89 | CONF-INTRA-OFFICE STUDY/ANALYZE fee app., escrow funds | 0.2 | 22.00 | 22.00 | PREPARATION OF FEE PETITION |
| 72 | 09/31/89 | REVIEW FILE escrow funds | 0.4 | 44.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 73 | 09/06/89 | CONF-INTRA-OFFICE REVIEW FILE JAG re fee app., escrow acct. | 0.4 | 50.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 74 | 09/06/89 | TEL w/OTHER STUDY/ANALYZE re fee app., daily reports | 0.4 | 50.00 | 0 | LUMPING |
| 75 | 09/14/89 | STUDY/ANALYZE daily reports to MNIFC | 0.2 | 25.00 | 0 | LUMPING |

TOTAL $3,592.00 $1,443.00

NAME OF ATTORNEY: PAULA KRAHN MERKLE

## APPENDIX - DISALLOWANCE/REDUCTION IN TIME CHARGES OF FRANK, BERNSTEIN IN THE LEONARD JED CO. CHAPTER 11

| ITEM NO. | DATE | SERVICES DESCRIBED IN TIME RECORDS | HOURS CLAIMED | AMOUNT CHARGED | AMOUNT ALLOWED | REASON FOR ALLOWANCE, DISALLOWANCE OR REDUCTION |
|---|---|---|---|---|---|---|
| 1 | 07/13/07 | Review FILE review of monthly statement of affairs | 0.7 | 22.00 | 0 | NON-PRODUCTIVE DOCUMENT REVIEW |
| 2 | 07/13/07 | RESEARCH | 1.5 | 165.00 | 0 | INSUFFICIENT DESCRIPTION |
| 3 | 07/24/07 | RESEARCH | 2.5 | 275.00 | 0 | INSUFFICIENT DESCRIPTION |
| 4 | 07/27/67 | RESEARCH CONF-INTRA-OFFICE | 1.2 | 132.00 | 0 | INSUFFICIENT DESCRIPTION |

TOTAL $594 00     $ - 0 -

NAME OF ATTORNEY : JOSEF E. ROSENBLATT

APPENDIX – DISALLOWED EXPENSES

| | |
|---|---|
| Telephone | $ 129.32 |
| Messenger | 192.25 |
| Secretarial Overtime | 241.09 |
| Meals | 89.00 |
| Postage | 150.22 |
| **TOTAL** | **$ 801.88** |