**In re MAXINE'S INC., Debtor.**

**No. 99–5–3923–JS.**

United States Bankruptcy Court, D. Maryland.

Sept. 30, 2003.

Robert John Morrissey, Esq., Morrissey Brothers, P.C., Bowie, MD, for Debtor.

Kristin Case Lawrence, Bishop, Daneman & Simpson, LLC, Baltimore, MD, for Interbay Funding, LLC.

Gerard R. Vetter, Esquire, Goldman & Vetter, P.A., Baltimore, MD, for Brian A. Goldman, Trustee.

W. Charles Rogers, III, Esquire, Baltimore, MD, for Blue Island, Inc.

### MEMORANDUM OPINION SUSTAINING DEBTOR'S OBJECTION TO THE AMENDED FEE APPLICATION OF DEBTOR'S FORMER COUNSEL

JAMES F. SCHNEIDER, Chief Judge.

Before the Court is the objection to the amended fee application of June White Dillard, Esquire, former counsel to the debtor-in-possession. For the reasons set

forth in this opinion, the objection will be sustained and the fee requested will be allowed in a reduced amount.

### FINDINGS OF FACT

On August 24, 2000, Maxine's, Inc., the debtor-in-possession, filed an application [P. 55] to employ June White Dillard, Esquire, as counsel, and she was appointed by order [P. 60] entered on October 2, 2000. The corporate debtor is the owner of a gravel pit located in St. Mary's County, Maryland, that has been dormant for most of the duration of this case, which was filed in March 1999.

On March 6, 2001, this Court entered an order [P. 66] compelling the debtor to file a plan and disclosure statement within 60 days. On July 13, 2001, Ms. Dillard filed a motion to withdraw as counsel [P. 81], which the Court ultimately granted and on October 10, 2001, the debtor filed a motion to appoint Robert J. Morrissey as substitute counsel. On November 29, 2001, this Court entered orders substituting Mr. Morrissey and the firm of Morrissey Brothers, P.A., as counsel to the debtor, *vice* June While Dillard [PP. 101 and 99].

On December 26, 2001, Ms. Dillard filed an application for compensation [104–1] in the amount of $19,320.00, plus reimbursement of expenses in the amount of $252.66. On April 18, 2002, after notice and a hearing, this Court issued an opinion and order [P. 121] which denied the application with leave to amend, for the following reasons:

The fee application is woefully deficient for many reasons, not the least of which is counsel's failure to include a "lodestar" analysis, a clear statement of services rendered and time expended. When challenged by the objectors, counsel was unable to bear her burden of proof that certain services were actually rendered or, if rendered, were beneficial to the debtor. During the time counsel represented the debtor, she failed to file a plan and disclosure statement and the case languished to the perilous point of almost being dismissed.

Opinion and order, [P. 121].

On May 17, 2002, Ms. Dillard filed an amended fee application [P. 128] for the period from August 4, 2000, through December 20, 2001, in the amount of $10,980, plus the retainer in the amount of $7,500 and reimbursement of expenses in the amount of $323.6. On June 20, 2002, an objection to the amended application was filed by the debtor [P. 132], and on October 21, 2002, a hearing was held on the amended application and objection.

The debtor's objection to the fee is premised upon the charge against Ms. Dillard that she wasted critical time in the fruitless pursuit of obtaining zoning approval for the debtor's business operations while failing to file a Chapter 11 plan of reorganization and a disclosure statement. As the deadline to file a plan approached, the debtor engaged new counsel, who obtained an extension to file the plan because of former counsel's delay. However, even the plans Mr. Morrissey ultimately filed failed to be confirmed.

Ms. Dillard stated that at the outset of the case, the debtor's gravel pit was dormant, and so she spent considerable time and effort in attempting to obtain a contract to operate the pit in order that a plan could be submitted. She said she later discovered that the debtor's only income producing asset, namely a conditional use permit for the operation of the gravel pit, had expired before the case was filed. Therefore, a great deal of time was spent at two extensive hearings before the St. Mary's County Planning Board in an effort to obtain a new permit. This necessitated the filing of a site plan. Counsel worked with a surveyor, the debtor, witnesses, truck drivers and with the lender, Harbor

Bank. There was no other way that income could be produced. The permit was denied because residents who lived across from the pit opposed granting the debtor a permit. The time expended is reflected in the amended fee application, which details conferences, phone calls and counsel's efforts to obtain a permit. Ms. Dillard claimed to have extensive experience in zoning matters and offered to produce boxes of documents to show the work she had performed on the debtor's behalf.

Representatives of the debtor complained that Ms. Dillard did not return telephone calls or otherwise communicate with them, did not properly present the debtor's case before the county planning board and never filed a plan of reorganization with the bankruptcy court despite their repeated requests that she do so, all of which they attributed to her refusal to cooperate and her general lack of ability as an attorney.

## CONCLUSIONS OF LAW

This is a Chapter 11 reorganization that required the dedicated services of a sophisticated and highly-skilled bankruptcy attorney. The applicant lacked the qualifications necessary to adequately represent this debtor. She should have known at the outset of the case that she was "out of her depth." Her lack of familiarity with the requirements of the case is borne out by the first fee application she filed that this Court denied on the basis of its deficiency as to form.

In its opinion in the case of *In re Garrison Liquors,* 108 B.R. 561 (Bankr.D.Md. 1989), a failed Chapter 11 in which counsel fees were sought and objected to, this Court stated:

[C]ounsel who undertake to represent debtors cannot be required to predict the ultimate outcome of a Chapter 11 reorganization. Indeed, whether they are to be compensated cannot be based upon the success of the reorganization. Such a test would require debtor's counsel to also be debtor's guarantors. It would impose an impossible burden upon lawyers. Because some risk of failure is inherent in every Chapter 11 case, such a rule would preclude the filing of many potentially-successful reorganizations. This would not merely chill the enthusiasm for debtors' representation but would prejudice the bankruptcy system itself by promoting the filing of liquidation cases rather than reorganizations.

The performance of debtor's counsel must always be judged after the fact. Nevertheless, the Court must judge the nature of the services and the necessity for them as of the time the work was performed. The test for rendering such a decision is whether counsel exercised their best judgment in performing the services.

108 B.R. at 564.

In other words, while counsel to debtors-in-possession who perform their work competently should not bear the risk of loss if the reorganization fails, courts must evaluate that work in the light of whether it was necessary and reasonable in order to determine a proper fee for the work performed. The quality of the legal representation for which compensation is sought is always the most important consideration. Counsel who are unprepared or unqualified to represent debtors in Chapter 11 bear the risk that their inadequacies will cause harm to their clients and result in their fees being reduced or denied altogether.

In the instant case, this Court is far from convinced by the applicant that her services were beneficial to the debtor or even minimally adequate. She did not refute the charge that she failed to com-

municate with the corporate debtor's representatives, under the apparent misapprehension that her client was Maxine Pittman, the debtor's namesake. The record supports the conclusion that the debtor was not well served by Ms. Dillard's representation, which this Court terminated at the debtor's urging. Under the circumstances, the applicant has not met her burden of demonstrating that she should be compensated in the amount requested. As we stated in the case of *In re Leonard Jed ("Jed II")*, 118 B.R. 339 (Bankr.D.Md. 1990):

> The burden of proof is always borne by the applicant regarding the award of fees in a bankruptcy case. A sufficiently detailed fee application containing a lodestar analysis which is supported by accurate, well-documented records is an absolute requirement. An itemized list of out-of-pocket expenses for which reimbursement is sought and the justification for charging the bankruptcy estate for them must be set forth in the fee application. The fee application must indicate the exercise of billing judgment by disclosing the number of hours "written off" of the requested fee. Failure to exercise billing judgment, excessive use of office conferences and unnecessary duplication of effort will result in the reduction of fees when they are unreasonable in the sound discretion of the Court.

118 B.R. at 347. The exercise of billing judgment is the voluntary reduction of a fee by counsel to a private client for services either conferred a negligible benefit or were excessive. *In re Leonard Jed ("Jed I")*, 103 B.R. 706, 713 (Bankr.D.Md. 1989). Such billing judgment is an absolute requirement of fee applications in bankruptcy. *In re Bernard Hill, Inc.*, 133 B.R. 61, 62 (Bankr.D.Md.1991).

The instant fee application demonstrates virtually no billing judgment. Yet this is a case that demands that billing judgment be exercised, because most of counsel's services conferred absolutely no benefit upon the debtor. One example is counsel's alleged efforts to procure trucking contracts for the gravel pit when even a cursory investigation would have revealed the absence of a conditional use permit. Under the circumstances, counsel's lack of preparation in representing the debtor meant that many of the early services she rendered were valueless. Much of the effort she expended amounted to "spinning wheels." Ms. Dillard was on notice that a plan and disclosure statement were required to be filed before the arrival of a rapidly-approaching deadline, yet she took no action to obtain an extension.

WHEREFORE, this Court will sustain the objection and award a total fee in the amount of $8,500.00, including the $7,500.00 retainer which was already paid, plus expenses in the amount of $323.00, and will deny the remainder of the application.

ORDER ACCORDINGLY.

### ORDER SUSTAINING DEBTOR'S OBJECTION TO THE AMENDED FEE APPLICATION OF DEBTOR'S FORMER COUNSEL

Based upon the memorandum opinion filed simultaneously herewith, the objection [P. 132] of the debtor, Maxine's, Inc., to the amended fee application [P. 128] of June White Dillard, Esquire, is hereby SUSTAINED. Compensation is hereby ALLOWED in the reduced amount of Eight Thousand Five Hundred Dollars ($8,500.00), including a retainer of Seven Thousand Five Hundred Dollars ($7,500.00) heretofore paid, plus expenses in the amount of Three Hundred Twenty-

three Dollars ($323.00).   The remainder of the application is hereby DENIED.